(No. 21926.—

THE PEOPLE *ex rel.* Mario Pollastrini, Defendant in Error, *vs.* EMMETT WHEALAN *et al.*—(THE COUNTY OF COOK, Plaintiff in Error.)

*Opinion filed October 21, 1933.*

THOMAS J. COURTNEY, State's Attorney, (HAYDEN N. BELL, ROBERT S. CUSHMAN, LOUIS H. GEIMAN, and JOHN E. PEDDERSON, of counsel,) for plaintiff in error.

VICTOR FROHLICH, for defendant in error.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The People of the State, on the relation of Mario Pollastrini, filed a petition for a writ of *mandamus* in the circuit court of Cook county against the president of the board of commissioners, the comptroller and the treasurer of that county. The writ was sought to coerce the certification of the relator's salary as a deputy bailiff for two specific periods; the issuance of warrants therefor, and the payment of the warrants so issued. The respondents' answer was followed by a replication. Evidence was heard and the court awarded the writ commanding the respondents charged with the duty to issue warrants in accordance with the prayer of the petition. The respondents prosecuted an appeal to the Appellate Court for the First District and that court affirmed the judgment. The county of Cook, not a party to the cause, prosecutes this writ of error.

The relator, Mario Pollastrini, was employed as a deputy bailiff in the office of the sheriff of Cook county. His employment began prior to September 1, 1931, and had not been terminated when this suit was instituted on March 22, 1932. The fiscal year of the county of Cook begins on the first Monday of December and ends on the

Sunday preceding the first Monday of December of the succeeding year. The salary of the relator for the fiscal year beginning on the first Monday of December, 1930, was fixed at $180 per month, payable in semi-monthly installments of $90 each. The annual appropriation bill for the same fiscal year was passed by the board of commissioners of Cook county within the first quarter of that year and included the relator's salary at the rate specified. Section 4 of this appropriation bill provided that the salaries or rates of compensation of all officers and employees of the county, when not otherwise provided by law, should be in accordance with those fixed in the resolutions theretofore adopted by the board of commissioners and should not be changed during the year for which the appropriations were made. On June 29, 1931, after the appropriation bill had become effective, the board of commissioners adopted a resolution requiring every officer and employee of the county to take a vacation of not less than two weeks and to forego his salary or compensation during that period. The relator did not observe the provisions of the resolution but continued to perform his duties without interruption. His salary for the first half of September, 1931, amounting to $90, was withheld, and upon his demand, payment of the semi-monthly installment was refused.

For the fiscal year beginning on the first Monday of December, 1931, the salary of every deputy bailiff in the sheriff's office, of the relator's class or grade, was fixed at $146.88 per month. The board of commissioners, by the annual appropriation bill, which was passed on March 5, 1932, and published in a Chicago newspaper seven days later, made provision for the relator's salary at this rate. The bill or ordinance, in its first section, is expressly declared to be the "annual appropriation bill of the county of Cook for the current fiscal year commencing on the first Monday of December, A. D. 1931." The fourth section contains the same prohibition as the preceding annual

appropriation bill against a change in salary or rate of compensation during the year for which the appropriations are made. The relator demanded a salary at the rate of $180, instead of $146.88, per month for the period from the first Monday of December, 1931, the beginning of the fiscal year, to March 13, 1932, the day after the annual appropriation bill was published, and payment at the higher rate was refused. To compel compliance with his two demands, the relator filed his petition for a writ of. *mandamus*.

At the threshold of our inquiry, the question of the right of the county of Cook to prosecute this writ of error is presented. The county was not a party to this cause in the circuit or Appellate Court. The right of appeal, which is statutory, is given only to parties. A writ of error is not so limited in its application. It is the beginning of a new suit for the correction of errors of inferior courts and may be prosecuted as a matter of right in all civil cases by any person who is either a party or privy to the record, or is damaged by the judgment, or will be benefited by its reversal, or is competent to release error. (*Anderson* v. *Steger,* 173 Ill. 112; *People* v. *O'Connell,* 252 id. 304; *People* v. *Harrigan,* 294 id. 171.) The judgment rendered by the trial court requires the issuance of warrants for the salary claimed. These warrants, if sustainable, must necessarily be satisfied out of the county's funds. Manifestly, the county will be benefited by a reversal of the judgment. The county of Cook therefore has the right to prosecute a writ of error for a review of the record; and since a construction of a provision of the constitution is invoked, the writ of error was properly sued out of this court.

Section 7 of article 10 of the constitution provides that "The county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such manner as may be pro-

vided by law." By section 9 of the same article, it is provided that the number of the deputies and assistants of the clerks of all the courts of record, the treasurer, sheriff, coroner, and recorder of deeds of Cook county "shall be determined by rule of the circuit court, to be entered of record, and their compensation shall be determined by the county board." Section 61 of the act entitled "An act to revise the law in relation to counties" (Cahill's Stat. 1933, p. 846; Smith's Stat. 1933, p. 850) applies only to Cook county. The ninth sub-section provides that "The salaries or rate of compensation of all officers and employees of said county, when not otherwise provided by law, shall be fixed by the board of commissioners and shall be fixed prior to the adoption of the annual appropriation, and shall not be changed during the year for which the appropriation is made." The fourth section of the annual appropriation bill for the fiscal year beginning on the first Monday of December, 1930, repeats the foregoing provision of sub-section 9 of section 61, prohibiting changes in salaries or rates of compensation during the period specified.

The constitution vests the management of the county affairs of Cook county in a board of commissioners. This general provision, however, does not confer unrestricted power in the conduct, management or supervision of the several county offices. The number of deputies and assistants in the county offices enumerated in section 9 of article 10 of the constitution is determined, not by the board, but by "rule of the circuit court." The express power constitutionally conferred upon the board of commissioners respecting such deputies and assistants is to fix their compensation. When that duty is performed in any given year, a change in the salary or rate of compensation during the year for which the appropriation is made is forbidden by statute. The legislative purpose not to permit changes in the salaries or rates of compensation of the deputies and assistants designated, except periodically and in the manner

defined, is manifest. If such salaries and rates of compensation may be decreased at any time during a particular year, notwithstanding the provision therefor in the annual appropriation bill, they may likewise be increased and neither the board of commissioners nor the tax-payers can obtain the requisite knowledge respecting the burden to be discharged. The provisions of the annual appropriation bill, effective when the resolution of June 29, 1931, was adopted, could not be repealed or abrogated by that resolution. The relator performed his duties as a deputy bailiff during the first half of September, 1931, and he is entitled to his salary, amounting to $90, for that period.

The second demand of the relator, namely, for a salary of $180, instead of $146.88, per month for the period from the first Monday of December, 1931, to March 13, 1932, presents the question whether an annual appropriation bill, passed by the board of commissioners within the first quarter of the county's fiscal year, and published as required by the statute, relates back to the beginning of that year. A fiscal year is defined in Webster's New International Dictionary as the year by or for which accounts are reckoned, or the year between one annual time of settlement, or balancing of accounts, and another. By section 62 of the Counties act (Cahill's Stat. 1933, p. 853; Smith's Stat. 1933, p. 858) the fiscal year of the county of Cook begins on the first Monday of December in each year. The first paragraph of the sixth sub-section of section 61 of the same act provides that the board of commissioners shall, within the first quarter of each fiscal year, adopt a resolution, to be termed the annual appropriation bill, by which the board shall appropriate such sums of money as may be necessary to defray all necessary expenses and liabilities of the county, to be "paid or incurred during and until the time of the adoption of the next annual appropriation bill under this section." To become effective, not only the adoption or passage of the annual appropria-

tion bill, but also its publication once in a Chicago newspaper is required by the fifth paragraph of the same subsection.

Upon the foregoing statutory provisions, the relator bases his contention that he is entitled to a salary at the higher rate from the beginning of the new fiscal year until March 13, 1932, the day after the current annual appropriation bill was published. It is a fundamental rule of statutory construction that the intention of the law-maker should be deduced from a view of the whole statute and of every material part of it. (*United States* v. *Ewing,* 237 U. S. 197; *People* v. *Wallace,* 291 Ill. 465; *Hunt* v. *Chicago Horse and Dummy Railway Co.* 121 id. 638; *Wabash, St. Louis and Pacific Railway Co.* v. *Binkert,* 106 id. 298; *Stribling* v. *Prettyman,* 57 id. 371; *Bruce* v. *Schuyler,* 4 Gilm. 221.) When other provisions of section 61 of the Counties act are considered, the legislative intent manifested does not accord with relator's contention.

The second paragraph of the sixth sub-section of section 61 of the Counties act provides that the annual appropriation bill shall specify the objects and purposes for which appropriations are made and the amount appropriated for each object or purpose and, for the year 1931 and each year thereafter, shall include appropriations for all current expenditures or charges to be made or incurred during such fiscal year. By the sixth paragraph of the same subsection, it is provided that after the adoption of the appropriation bill, the board of commissioners shall not make any further appropriations prior to the adoption or passage of the succeeding annual appropriation bill, and that the board of commissioners shall have no power, directly or indirectly, to make any contract or to do any act which shall increase the county's expenditures or liabilities in any year above the amount provided in the "annual appropriation bill for that fiscal year." By the seventh paragraph neither the board, nor any member or committee of that

body, nor any officer of the county, nor any person holding any office, trust or employment under the board or the county, shall, during a fiscal year, expend any money, incur any liability or enter into any contract involving the expenditure of money, for any purpose, in excess of the amount appropriated, and, as to the county, any contract, verbal or written, made in violation of the sixth sub-section shall be null and void and no moneys belonging to the county shall be paid thereon. Emphasis is placed upon the fiscal year in each of these three paragraphs. The second requires the board of commissioners to include, in the annual appropriation bill or ordinance, appropriations for all expenditures and charges during the whole, and not a part, of the fiscal year. The sixth and seventh paragraphs expressly prohibit an increase in the county's expenditures above the appropriations for the particular fiscal year. Obviously the provisions of these three paragraphs are mandatory. They show clearly that appropriations are made for the whole of a fiscal year and not that part of the year which remains after the annual appropriation bill has been published. Expenditures of public money must have as a basis sufficient appropriations for specific objects and purposes made during the first quarter of the fiscal year. When so made, the appropriation bill or ordinance necessarily relates back to the beginning of that year.

Recourse to an analogous situation sustains this conclusion. Section 2 of article 7 of the Cities and Villages act (Cahill's Stat. 1933, p. 332; Smith's Stat. 1933, p. 355) requires the city council in cities and the board of trustees in villages to pass the annual appropriation bill within the first quarter of each fiscal year. Section 104 of article 5 of the same act (Cahill's Stat. 1933, p. 329; Smith's Stat. 1933, p. 352) provides that all ordinances of cities and villages imposing any fine, penalty, imprisonment or forfeiture, or making any appropriation, shall, within one month after they are passed, be published in a local newspaper or,

in the absence of such a newspaper, by posting copies in three public places in the city or village, and that no such ordinance shall take effect until ten days after it has been so published. Under these statutory provisions this court declared in *City of Danville* v. *Danville Water Co.* 180 Ill. 235, that the passage of the annual appropriation bill at any time within the first quarter of the fiscal year answered the requirements of the statute and that, prior to the passage of the ordinance, a city or village might, during such quarter, enter into any authorized contract or incur any lawful expense and include the appropriation therefor in the ordinance passed within the time specified. The annual appropriation bill so passed included the appropriations for the whole fiscal year and related back to its beginning. The later case of *Stripe* v. *Yager,* 348 Ill. 362, is to the same effect.

Strict observance of the provisions of the sixth subsection of section 61 of the Counties act is enjoined by the eighth paragraph. It provides that any member of the board of commissioners or any officer of the county, or any person holding any office, trust or employment under the board or the county, who shall be guilty of the willful violation of any of the provisions of the sub-section, shall be fined not exceeding $10,000, shall forfeit his right to his office, trust or employment and shall be removed therefrom. It need not be observed that the writ of *mandamus* is not available to coerce a public officer to violate the law and to incur the consequent penalties.

The judgments of the Appellate and circuit courts are reversed and the cause is remanded to the circuit court with directions to award the writ of *mandamus* commanding the respondents to the petition charged with the duty to issue and deliver to the relator a warrant for $90, the amount of his salary for the first half of September, 1931.

*Reversed and remanded, with directions.*