HOWARD A. LAYFER *et al.*, Plaintiffs-Appellees, *v.* TERRENCE A. TUCKER *et al.*, Defendants.—(WILLIAM J. SCOTT, Attorney General, *et al.*, Appellants.)

Second District    No. 77-490

Opinion filed May 3, 1979.

William J. Scott, Attorney General, of Chicago, *pro se* (Robert G. Epsteen, Assistant Attorney General, of counsel), for appellants.

Sanford R. Gail, of Karaganis & Gail, and Fred I. Shandling, of Ardell & Shandling, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The sole question presented in this case is whether the trial court properly awarded plaintiffs attorney's fees out of a tax fund set up by the Lake County treasurer.

In July 1975 plaintiffs filed a class action suit on behalf of Illinois taxpayers residing outside of Lake County. The complaint sought to hold that the provisions of section 21 of the Inheritance and Transfer Tax Law (Ill. Rev. Stat. 1973, ch. 120, par. 394) were unconstitutional due to the adoption of article VII, section 9(a) of the Illinois Constitution. The statutory provision authorized the county treasurer to retain and pay into the county treasury 4 percent of all taxes paid to him for the State of Illinois under the Act. The complaint further sought a temporary and permanent injunction enjoining the Lake County treasurer from retaining the 4 percent fees and that the same be segregated and placed in a trust fund to be distributed pursuant to the order of the circuit court of Lake County.

The record discloses that the county treasurer of Lake County had, in fact, already segregated these funds and deposited the same in several

qualified banking depositories since December 1971, the effective date of the relevant constitutional provision. At the time of the filing of the instant lawsuit the treasurer of Lake County had accumulated $792,653.75, deposited in qualified banking depositories. On January 7, 1976, the parties hereto stipulated that this fund would not be paid out. At that time the fund had increased to $859,147.60. Thus, this fund was not established in the original instance as a fund for the class represented by counsel for the plaintiffs.

During the pendency of the proceedings below it was pointed out that the attorneys representing the plaintiffs herein had filed a similar class action in Cook County on behalf of all taxpayers of Illinois residing outside of Cook County. It was represented that this case was on appeal to the supreme court. As a result thereof, the proceedings of the trial court herein were stayed pending the decision by the supreme court. On December 3, 1976, the supreme court rendered its decision in *Goldstein v. Rosewell* (1976), 65 Ill. 2d 325, 357 N.E.2d 1157, holding the statutory provision in question herein unconstitutional. Subsequently, plaintiffs herein moved for and were granted judgment on the pleadings; the defendants were ordered to file an accounting of the funds retained from December 1, 1971, and were enjoined from transferring or disposing of these funds.

Plaintiffs' attorneys then petitioned the trial court for attorneys' fees in the sum of $60,295. At this juncture the State of Illinois filed objections to the allowance of attorneys' fees but refused to formally intervene, and the objections were subsequently stricken by the trial court for lack of standing by the State of Illinois. On the same date the court awarded the sum of $30,800 as attorneys' fees to the attorneys for the class. The order further provided for the payment of costs and that the Lake County treasurer be directed to issue vouchers drawn upon the special account representing these fees in the sum of $30,800, together with costs in the sum of $101.60. The order further provided that these fees be paid from this special account and that the balance of the funds in the special account, after payment of these fees and costs, be paid to the Treasurer of the State of Illinois. Only at this time did the State (unsuccessfully) attempt to intervene. The order was subsequently modified whereby $100,000 of the escrowed funds were to be paid to the clerk of the circuit court subject to its order and the balance remaining to the State of Illinois.

This appeal is by the Attorney General of Illinois and the State Treasurer. The plaintiffs herein have filed a motion to dismiss the appeal on the basis that the appellants were not parties to the proceedings below in the trial court and therefore lack standing; that new grounds for reversal cannot be first raised on appeal; and that they have accepted the benefits of the order they now seek to appeal and are, therefore, barred

from appealing. Objections were filed to this motion, and we have ordered the motion and the objections thereto taken with the case.

The first issue presented to us is whether the Attorney General and the Treasurer of the State of Illinois, on behalf of the State of Illinois, have the power and authority to bring this appeal. We conclude that they do and refuse to dismiss the appeal.

■■ ■ Although the State was not a party to the initial suit, nonparties have a right to appeal under certain circumstances. Whether they have standing is dependent on whether they have some direct, immediate and substantial interest in the subject matter which would be prejudiced by a judgment or benefitted by its reversal. (*Flanagan v. Hulman* (1970), 121 Ill. App. 2d 382, 257 N.E.2d 599.) Plaintiffs admit this to be the law, but contend that neither the Attorney General nor the Treasurer of Illinois have such interest as would give them this standing. We disagree. In *People ex rel. Pollastrini v. Whealan* (1933), 353 Ill. 500, 187 N.E. 491, the State filed a petition for a writ of mandamus on behalf of a deputy bailiff, naming the president of the board of commissioners, the treasurer and the controller of Cook County as defendants, and requesting that they be ordered to issue and pay warrants for the deputy bailiff's salary. The trial court ordered the writ and the appellate court affirmed. Only then did Cook County itself attempt to enter the proceedings by prosecuting a writ of error to the supreme court. That court held that the writ was properly brought by the county, reasoning that:

"The judgment rendered by the trial court requires the issuance of warrants for the salary claimed. These warrants, if sustainable, must necessarily be satisfied out of the county's funds. Manifestly, the county will be benefited by a reversal of the judgment. The county of Cook therefore has the right to prosecute a writ of error for review of the record; * * *." (353 Ill. 500, 503, 187 N.E. 491, 493.)

The instant case is very similar to *Pollastrini*. The award of attorneys' fees would, if sustained, be satisfied from funds that would otherwise be the property of the State.

Plaintiffs argue that the monies in the hands of the county treasurer are not State funds "since they [have] never been deposited in the State Treasury" but rather are "funds of Lake County which became subject to the court's jurisdiction and which after the amounts of fees and costs would be turned over to the State by the court." This is a dubious argument in light of the fact that the substantive basis of plaintiffs' suit was the contention that the State had the right to the money being held by the county treasurer. Having succeeded in their efforts to show that the money should rightfully belong to the State, plaintiffs now contend that this is not State money. We cannot agree. If the State has a right to the

money, the fact that it is not yet in the treasury does not make it any less the State's money for purposes of whether the State has an appealable interest.

■■ ▌Plaintiffs further contend that (1) the State asserts grounds for reversal not presented to the trial court and (2) that having accepted some of the benefits of this litigation the State is precluded from attacking the validity of an order entered in this proceeding. As to (1) above, the ground for reversal attacks the jurisdiction of the court to award fees and costs from State funds (the merits of this contention are hereafter discussed in this opinion). An order or decree entered by a court which lacks the inherent power to make or enter the particular order involved is void and may be attacked at any time and in any court. (*City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154.) As to (2) above, the record shows that the substantive decision on the constitutionality of the statute was made by the trial court in its decree of January 18, 1977, while the award of attorneys' fees was the subject of a separate order entered June 21, 1977. The validity of the order of June 21 is the issue in this appeal; it is a separate order entered 6 months after the decree ruling on the merits of this case. In any event, it is severable from the January 18 order. When a decree is severable an appeal can be taken from the severable portion or from a part dealing with a particular subject. (*Kerner v. Thompson* (1937), 365 Ill. 149, 6 N.E.2d 131.) Under these circumstances we hold that the benefits accruing to the State as a result of the January 18 order are not such as to preclude the State's jurisdictional attack on the June 21 order.

Having held that the State can properly prosecute this appeal, we now turn to the substantive question before us: namely, whether the trial court could properly award the attorneys' fees and costs. The State contends that the court's awards were improper for three reasons: (1) that the doctrine of sovereign immunity operates to void the jurisdiction of the trial court on these fees; (2) that the State was an indispensible party to the petition and that the failure to make the State a party bars the award of fees, and (3) that there is no statutory or common law authorization for payment of fees and costs in this type of case.

■■▌The State's first contention is that the trial court was without power to grant the requested awards because these awards were, in effect, a judgment against the State and as such could only be brought in the court of claims, absent some specific statutory authorization of jurisdiction in the circuit court. (See Ill. Rev. Stat. 1977, ch. 127, par. 801.) Plaintiffs do not dispute that suits against the State of Illinois can normally be brought only in the court of claims, nor do they claim any specific statutory provision enabling the circuit court to take jurisdiction in this particular case. Rather, they contend that the awards for fees and expenses are not

suits for judgment against the State. Whether or not a particular action falls within the prohibition of the doctrine of sovereign immunity should not be determined solely by an identification of the formal parties to the record. The determination should depend upon the particular issues involved rather than the relief sought. (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37, 101 N.E.2d 71, 72.) We find that this award of fees and expenses is, in substance, a judgment against the State of Illinois and, because of the absence of a statutory provision authorizing otherwise, can only be awarded, if at all, by the Illinois Court of Claims in an action brought in that court.

■■ Plaintiffs emphasize the argument that these monies are not State funds but funds of the county which became subject to the court's jurisdiction. We reject this argument for the same reason we rejected it in the discussion of whether the State had an appealable interest. The supreme court held, in *Goldstein v. Rosewell*, that the State, rather than the county, has an unquestioned legal right to this money. That it is temporarily in a county account or in a fund supervised by the court does not render it somehow less the State's money for purposes of the doctrine of sovereign immunity. The parties spent considerable energy arguing whether this fund was created or preserved by the plaintiffs and thus falls within the holding of *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1. It is unnecessary for us to decide this issue for, even if this were such a fund, it would not justify an award of fees out of funds otherwise belonging to the State. The allowance of fees and costs, whether authorized either by statute or by common law, does not automatically extend to awards against State funds.

> "Statutes which in general terms authorize imposing costs in various actions or proceedings but do not specifically refer to the State are not sufficient authority to hold the State liable for costs. The State's consent to the imposition of costs against it must appear in affirmative statutory language." (*Department of Revenue v. Appellate Court* (1977), 67 Ill. 2d 392, 396, 367 N.E.2d 1302, 1304.)

Although the bulk of the award in the instant case involves attorneys' fees rather than costs, we see no significant distinction between the two in the context of sovereign immunity.

*German Alliance Insurance Co. v. VanCleave* (1901), 191 Ill. 410, 61 N.E. 94; *People ex rel. Conn v. Randolph* (1966), 35 Ill. 2d 24, 219 N.E.2d 337; and *Flynn v. Kucharski*, all cited by plaintiffs, are not contrary to this rule. *VanCleave* involved money found to have been illegally collected by the State. Plaintiffs herein do not contend that the State does not have the right to the monies but only that an award of fees should be taken out first. *Conn* involved clear statutory authority for reimbursement of fees

and costs to the petitioners by the State. Plaintiffs herein have not relied on any such specific statutory authorization. *Flynn*, as has been noted, involved attorney's fees taken from county, not State, funds; thus sovereign immunity was not raised as an issue therein.

For the foregoing reasons, we hold that the awards made by the trial court are prohibited by the statute granting the State immunity from suit, and the order granting those awards must be reversed. Having thus held, we find it unnecessary to rule on the other contentions raised by the State.

Reversed.

WOODWARD and SEIDENFELD, JJ., concur.