HOWARD G. KAPLAN *et al.*, Plaintiffs-Appellees, *v.* GEORGE E. MAHIN, Director of the Department of Revenue, *et al.*, Defendants-Appellants.

First District (3rd Division)   Nos. 77-318, 77-326 cons.

Opinion filed December 31, 1979.

William J. Scott, Attorney General, of Chicago (Robert G. Epsteen, Assistant Attorney General, of counsel), for appellant George E. Mahin.

William R. Quinlan, Corporation Counsel, of Chicago, for other appellants.

Block, Levy & Becker, Ltd., and Neistein, Richman, Hauslinger & Young, Ltd., both of Chicago (Harry A. Young, Jr., and Alvin W. Becker, of counsel), for appellees.

Mr. JUSTICE RIZZI delivered the opinion of the court:

Defendants State of Illinois and city of Chicago and certain of their financial officials appeal from an order granting fees to the attorneys for plaintiffs in these consolidated class action suits. After a Federal tax law was repealed, plaintiffs sued defendants to enjoin the collection and disbursement of taxes levied under companion Illinois tax statutes and to obtain refunds of the monies collected. Subsequently, a refund statute was enacted, refunds made, and summary judgment entered for defendants. On appeal, defendants contend that the trial court lacked jurisdiction to grant the fees absent statutory authorization. We reverse.

On December 10, 1971, the Federal excise tax on the sale of new motor vehicles was repealed retroactive to August 16, 1971. (26 U.S.C. §4061 (1970).) During the period between August 16 through December 10, the State of Illinois imposed and collected a 5% retailers' occupation tax and a municipal retailers' occupation tax upon the gross receipts of vehicle sales, including the amount attributable to the Federal excise tax. The retail vehicle dealers paid the taxes to the defendants, but the economic burden of the Illinois taxes was ultimately borne by the vehicle purchasers. Ill. Rev. Stat. 1971, ch. 120, par. 439 *et seq.*; ch. 24, par. 8—11—1 *et seq.*

On December 20, 1971, plaintiff Kaplan, on behalf of himself and other taxpayers who purchased vehicles during this period and paid these Illinois taxes, obtained an order against certain of defendant officials. Specifically, the order enjoined the Director of the Department of Revenue from paying into the State treasury any money received from these Illinois taxes. The order also established a fund whereby all such monies received were to be held by the State Treasurer until further order of the court. On December 31, other class action suits seeking similar relief were consolidated with the instant case. On February 8, 1972, the trial judge ordered that the State Treasurer "invest the present protest fund of approximately $344,000 at interest until further order of court."

On July 10, 1972, legislation became effective authorizing the Illinois Department of Revenue to make direct refunds to those vehicle buyers who made purchases from August 16 through December 10, 1971. (Ill. Rev. Stat., 1972 Supp., ch. 127, par. 39d—1.) Governor Ogilvie sent those purchasers a letter detailing the method for obtaining a refund. More than

130,000 claimants were paid almost $1.5 million in refunds in money appropriated by the legislature.

On November 10, 1976, the trial court entered summary judgment for defendants. The court order specified that the corpus of the protest fund was to be transferred to the general revenue fund of the State. It also provided that the attorneys for the plaintiffs were to be paid $47,750 in fees from the interest on the protest fund. Defendants appeal from that award of attorney fees.

■■ At the outset, the attorneys contend that many of defendants' arguments have been waived because not raised at the trial court. Although it is not totally clear from the record as to whether defendants raised all of their arguments below, we consider all substantive points raised on appeal, since the grounds for reversal attack the jurisdiction of the court to award fees from State funds. See *Layfer v. Tucker* (1979), 71 Ill. App. 3d 333, 337, 389 N.E.2d 252, 255.

Defendants initially argue that the long-established rule against awarding attorneys' fees to successful litigants applies here absent statutory authorization or common law exception. Under the "American Rule," each party must bear its own costs absent legislative authorization, and therefore, the courts will not allocate the burdens of litigation. (*Alyeska Pipeline Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 247, 44 L. Ed. 2d 141, 147, 95 S. Ct. 1612, 1616; *accord, City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 113-14, 357 N.E.2d 1154, 1156.) Since there is no such statute in Illinois which provides for the awarding of attorneys' fees in class action suits, the attorneys maintain that they fall within two recognized exceptions to the American rule—the common benefit and common fund exceptions.

■■ ■ Under the common benefit exception, attorneys' fees can be awarded when a successful plaintiff, on behalf of a class, has borne the burden and costs of litigation; thus, those sharing in the benefits should help to pay the attorneys' fees. (*Mills v. Electric Auto-Lite Co.* (1970), 396 U.S. 375, 391-92, 24 L. Ed. 2d 593, 605-06, 90 S. Ct. 616.) The attorneys suggest two ways they have benefitted the class. First, by filing these lawsuits, they claim that they caused Governor Ogilvie to have legislation introduced which repealed the retailers' taxes. The attorneys rely on a letter sent by Governor Ogilvie to the vehicle purchasers who received the Federal tax refund. In the letter, the Governor states that, even though lawsuits were filed to administer a refund program, he had legislation prepared and introduced permitting direct refunds to the purchasers to insure that the purchasers received their total refund due.

The attorneys' argument does not withstand scrutiny. Even assuming that the Governor had such legislation prepared and introduced, only the legislature has the power to pass such a bill; the Governor's executive

power is limited to signing the bill into law. (Ill. Const. 1970, art. 4, §§8(b), 8(c), 9(a).) The attorneys present no legislative history, and we know of none, showing that the legislators intended to pass the refund law for the same reason as stated by the Governor. Moreover, the power of the legislature to enact this refund legislation (and not the executive by implication) was emphasized by the supreme court in *Youhas v. Ice* (1974), 56 Ill. 2d 497, 500-02, 309 N.E.2d 6, 8-9, a case upholding the constitutionality of this refund statute. In brief, the Governor's letter does not show that the attorneys conferred a common benefit upon the plaintiffs.

The second benefit to the class, according to the attorneys, is that by prosecuting this litigation and obtaining the preliminary injunction, they protected all vehicle purchasers until the State refund legislation was enacted. In this regard, we are sympathetic with the attorneys' efforts to protect the rights of the vehicle purchasers. Nevertheless, their efforts to invalidate the Illinois tax would, most likely, have failed. As stated by the *Youhas* court: "At the time the taxes were paid the excise tax was in effect and the *use tax was being properly imposed.*" (Emphasis added.) (56 Ill. 2d 497, 502, 309 N.E.2d 6, 9.) Thus, if the Illinois statutes were not constitutionally infirm, plaintiffs would not have prevailed in this litigation, and the common benefit exception would therefore not apply.

■ The attorneys also argue that the "common fund" exception applies here. Under that exception, attorneys' fees can be awarded when a fund is preserved or recovered for the benefit of others in addition to the plaintiff. (*Trustees v. Greenough* (1881), 105 U.S. 527, 532-33, 26 L. Ed. 1157, 1160; see *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 437, 356 N.E.2d 524, 525-26.) The attorneys submit that their efforts created the "protest fund," thereby recovering the tax fund for the benefit of plaintiffs. Defendants respond that this protest fund was not created in accordance with sections 2a and 2a.1 of "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois * * *" (Ill. Rev. Stat. 1971, ch. 127, pars. 172, 172a).

Since the protest fund was not properly preserved or protected here, we need not decide whether such a fund can be created absent statutory authorization. Until the State refund statute became effective, the Illinois taxes were properly imposed as the *Youhas* court has stated. Thus, the injunction diverted the flow of lawfully collected taxes which belonged to the State. Therefore, no fund was actually preserved or protected for the class members.

We do not believe that *Cassidy v. Lehnhausen* (1975), 25 Ill. App. 3d 1049, 324 N.E.2d 236, is applicable here. There the court allowed the recovery of attorneys' fees because the plaintiffs obtained an injunction holding certain personal property taxes paid in a separate escrow account

pending final adjudication of a tax exemption by the United States Supreme Court. The court upheld the tax exemption. (See *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 35 L. Ed. 2d 351, 93 S. Ct. 1001.) Thus, the taxpayers received a refund since the levy of taxes was unauthorized. Whereas the taxpayers here received a refund because validly authorized laws were repealed by legislative grace, the *Cassidy* taxpayers received a refund because the tax levy was unauthorized. Therefore, the attorneys here did not benefit the taxpayers as they did in *Cassidy*. The *Cassidy* court relied on *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1, as authority to award attorneys' fees. There again, however, the attorneys benefitted plaintiffs by successfully invalidating a tax statute, a result not present in this case. Similarly, *City of East Peoria v. Tazewell County* (1975), 60 Ill. 2d 263, 327 N.E.2d 331, is inapposite. The attorneys there prevented the "unlawful diversion of funds," rather than as here, where valid taxes were diverted.

Defendants also argue that the interest earned on the protest fund belonged to the State pursuant to section 1 of "An Act in relation to State moneys" (Ill. Rev. Stat. 1971, ch. 130, par. 21). The attorneys reply that this statute does not apply here and awarding fees from the interest earned was accomplished in the "most painless fashion imaginable."

■■ We do not decide whether that statute applies here because we conclude that the interest in the fund belonged to the State. Although there is merit to the attorneys' argument regarding the method used to award fees, we believe that the aforementioned court comments in *Youhas* are important here. Since the Illinois taxes were valid when passed, the money segregated in the protest fund belonged to the State until legislative repeal of the statutes. Therefore, the interest which accrued must also belong to the State. *Cf. Shapiro v. Barrett* (1978), 68 Ill. App. 3d 656, 661, 386 N.E.2d 76, 81.

Accordingly, the trial court's award of fees is reversed.

Reversed.

McNAMARA and McGILLICUDDY, JJ., concur.