METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO *ex rel.* WILLIAM F. O'KEEFFE, Plaintiff-Appellee, *v.* INGRAM CORPORATION *et al.*, Defendants-Appellees.—(METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO *ex rel.* ARAM A. HARTUNIAN, Intervenor-Appellant.)

First District (2nd Division)   No. 79-924

Opinion filed June 10, 1980.—Rehearing denied July 11, 1980.

Aram A. Hartunian, of Chicago, for appellant, *pro se.*

A. Denison Weaver and George J. Cullen, both of Chicago, for appellee Metropolitan Sanitary District of Greater Chicago *ex rel.* William F. O'Keeffe.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago, for appellees Ingram Corp., Ingram Barge Co., and Ingram Barge, Inc.

Neal & Harwell, of Nashville, Tennessee, for appellees E. Bronson Ingram and Frederic B. Ingram.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Aram A. Hartunian (hereinafter referred to as appellant), a nonparty to the record, filed this appeal in the name of Metropolitan Sanitary District in his relation as a taxpayer challenging an award of attorney's fees determined by the circuit court of Cook County after a hearing

pursuant to the terms of a settlement agreement reached by the parties of record. The record on appeal in this case is voluminous. Because of our disposition of the case, not all facts need be discussed. However, some background information is necessary for a clear understanding of this matter.

On May 12, 1971, the Metropolitan Sanitary District of Greater Chicago (MSD) entered into a contract with Ingram Corporation for the hauling of sludge (liquid fertilizer) from MSD's treatment plants to a downstate site. This contract was later assigned to Ingram Barge Company, a division of Ingram Corporation (hereinafter Ingram entities will be referred to collectively as Ingram). In 1974, an investigation into the circumstances surrounding MSD's award of the sludge contract to Ingram was commenced by a Federal grand jury. A Federal court criminal trial and several convictions resulted.

In 1975, during the course of the Federal investigation, William F. O'Keeffe (O'Keeffe) filed an action as a taxpayer on behalf of MSD in the circuit court of Cook County to recover funds allegedly wrongfully obtained by Ingram in connection with the contract. (Metropolitan Sanitary District of Greater Chicago ex rel. William F. O'Keeffe v. Ingram Corp., et al., No. 75 L 23747.) Subsequently, MSD commenced civil actions on its own behalf against Ingram in the Federal district court (Metropolitan Sanitary District of Greater Chicago v. Ingram Corp., et al., No. 76 C 1009) and in the circuit court of Cook County (Metropolitan Sanitary District of Greater Chicago v. Ingram Corp., et al., No. 77 L 24930). MSD was also granted leave to intervene in the O'Keeffe action.

The record indicates that appellant acted as special counsel to MSD from January 1976 to March 1977. During that time he filed MSD's civil action in the district court; sought to suppress the production of certain MSD documents; and represented MSD's General Attorney at his deposition.

Prior to a judicial determination in any one of the three cases, a settlement agreement was reached by the parties which encompassed the O'Keeffe action as well as the two civil actions commenced by MSD. In brief, the settlement agreement provided that all claims asserted against Ingram in the three actions would be released upon Ingram's relinquishment of any claims it had against MSD in the approximate amount of $3,500,000 and its payment of $8,250,000 to MSD. Out of this $8,250,000 sum, MSD agreed to pay the fees and expenses of O'Keeffe's attorneys provided MSD's net recovery not be less than $7,250,000. It was agreed that the trial court would determine the amount MSD would pay in attorney's fees upon the submission of a fee petition and a hearing thereon. While MSD reserved the right to contest the fee petition at the

hearing, both MSD and O'Keeffe agreed to waive their rights to appeal the fee award. MSD further agreed not to contest O'Keeffe's standing. This agreement was approved by MSD's Board of Trustees and was signed by the parties and their counsel.

On April 4, 1979, the circuit court approved the settlement agreement as fair, reasonable, and adequate. The court's order established a schedule for the filing and a hearing on the fee petition, retained jurisdiction of the cause for the purpose of fixing the amount of attorney's fees, and stated that "subject to said determination, this cause is hereby dismissed with prejudice."

On April 5, 1979, pursuant to an agreement by the parties, MSD's Federal district court case was dismissed with prejudice. On April 6, 1979, the action commenced by MSD in the circuit court was likewise dismissed with prejudice.

On April 9, 1979, Ingram delivered a cashier's check in the amount of $8,250,000 to MSD in satisfaction of its obligation under the settlement agreement. On that same day, MSD acknowledged receipt of the check and forwarded to Ingram a summary of its actions in approving the settlement. Also on April 9, the circuit court entered two orders. One order dismissed O'Keeffe's complaint and cause of action with prejudice as to all defendants. The second order required MSD to file a response to the petition for attorney's fees and set a hearing date on the petition.

By order of April 18, 1979, the trial court after conducting an evidentiary hearing on the fee petition, awarded to O'Keeffe's attorneys $960,000 in fees and $16,842.30 in costs to be paid by MSD in accordance with the settlement agreement as approved on April 4, 1979. On April 19, 1979, MSD's Board of Commissioners approved this fee award and authorized and directed payment.

Before such payment was actually made, appellant by letter dated May 15, 1979, informed the legal department of MSD that he was greatly disturbed by the award of attorney's fees and intended to institute appellate procedures to review the fee award unless MSD did so itself. No action being taken by MSD to appeal the fee award, a notice of appeal stating the appellant to be "Intervenor, Metropolitan Sanitary District of Greater Chicago, ex rel. Aram A. Hartunian" was filed on May 17, 1979, appealing among other orders, the orders of April 4 approving the settlement and April 18 which awarded attorney's fees and expenses. In this notice, appellant prayed that the settlement agreement referred to in the April 4, 1979, order be declared void in its entirety and in particular the provisions about attorney's fees, standing, and the right of appellate review; that the fee petition be stricken and dismissed, and, in the alternative, that the April 18, 1979, order be reversed and cause be remanded for further hearings on whether any award of attorney's fees

was appropriate and, if so, the proper amount. On May 18, 1979, this notice of appeal was amended to include the order of April 9, 1979, but did not specify which one of the two orders entered on April 9, 1979.

In view of this appeal and the conflicting positions taken on MSD's behalf by two different taxpayers (O'Keeffe and Hartunian), MSD's Board of Commissioners refused to issue a check in payment of the attorney's fees until this court resolved the matter on appeal.

In July 1979, O'Keeffe initiated supplementary proceedings in the circuit court to enforce the judgment for attorney's fees and expenses. On September 13, 1979, the court ordered MSD to turn over to O'Keeffe checks payable to his attorneys in the amount awarded in the fee order within 15 days. MSD then filed an emergency motion requesting this court to enter an order staying, without bond, supplementary proceedings by way of citation or otherwise, enforcement proceedings, the trial court's order of September 19, 1979, and all other proceedings in the trial court seeking payment of attorney's fees and expenses pursuant to the fee order pending final disposition of the instant appeal. On September 25, 1979, this court granted MSD's motion.

By letter dated November 12, 1979, appellant clarified for Ingram's attorney the scope of his appeal. He stated that the appeal concerned only the fee award and not the validity of the settlement agreement. He further stated that the April 9, 1979, order to which he referred in his amended notice of appeal was the order which scheduled briefs and the hearing on the fee petition and did not refer to the other April 9 order which dismissed the case. With respect to the April 4, 1979, order, appellant stated that the only portions of the settlement agreement which are in issue in this appeal are those that relate to attorney's fees.

During the pendency of this appeal, Ingram, Seaboard Surety Company, and O'Keeffe filed numerous motions to dismiss the appeal on various grounds to which objections were filed. This court ordered these motions and objections taken with the case. Several of these motions challenge the jurisdiction of this court to entertain this appeal. Therefore, jurisdictional matters must first be resolved.

I.

Both Seaboard Surety Co. and Ingram have filed motions seeking dismissal of the appeal on the basis that this court lacks jurisdiction to entertain the appeal because it was not timely filed. They argue that the April 9, 1979, order which dismissed O'Keeffe's complaint and cause of action against all defendants with prejudice was a final and appealable order and that the notice of appeal was not filed within 30 days as required by Supreme Court Rule 303(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 303(a)). Nor was a motion filed seeking an extension of time for leave

to appeal pursuant to Supreme Court Rule 303(e). Ill. Rev. Stat. 1977, ch. 110A, par. 303(e).

O'Keeffe by motion argues that the 30-day time period in which to appeal began running from the April 4 order which approved the settlement agreement or at least from the time of the April 9 order which dismissed the action. O'Keeffe argues that the subsequent setting of fees was an accounting by the court, within the guidelines agreed to by the parties pursuant to the settlement agreement, and did not affect the finality and appealability of the April 4 and 9 orders.

■ A judgment or decree is final and reviewable when it terminates the litigation on the merits of the case and determines the rights of all parties. (*Almon v. American Carloading Corp.* (1942), 380 Ill. 524, 530, 44 N.E.2d 592.) In the April 4, 1979, order, the trial court approved the settlement agreement but specifically retained jurisdiction to resolve the matter of attorney's fees. Although the April 9, 1979, order did dismiss the O'Keeffe action with prejudice as to all defendants, the court on that same day entered an order setting a briefing schedule on the petition for fees and set a hearing date. Thus it is clear that the rights of all parties to the matter as set forth in the settlement agreement had not been finally terminated. Yet Ingram and Seaboard Surety contend that regardless of the dispute over attorney's fees, the April 9 order was final as to them. Even assuming this to be true, the order did not contain an express finding by the trial court that there was no just reason for delaying enforcement or appeal, and therefore was not appealable. Ill. Rev. Stat. 1977, ch. 110A, par. 304(a); *In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036; *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Harris Trust & Savings Bank* (1978), 63 Ill. App. 3d 1012, 1020, 380 N.E.2d 835.

■■ Appellant does not contest the validity of the settlement agreement. He appeals the amount of fees awarded. In this regard, the settlement agreement provided only that out of the $8,250,000 MSD was to receive from Ingram, MSD would pay O'Keeffe's attorneys' fees to be determined by the trial court, provided that MSD would net a recovery of at least $7,250,000. Under this agreement, O'Keeffe's attorneys could have received fees ranging anywhere from zero to a million dollars. The determination to be made by the trial court in awarding fees necessarily depended upon the evidence presented and involved judicial discretion. The fee award was not determined by the trial court until April 18, 1979. Under the circumstances here it was not possible for appellant to challenge the fee award until that fee was finally determined. The notice of appeal, being filed within 30 days of the April 18 date, was timely.

## II.

A second issue raised both by way of motion and in the briefs concerns the standing of appellant to bring this appeal.

Appellant was not a party or participant in the settlement agreement or the fee hearing. He brings this appeal challenging a judgment to which he was not a party.

■■ Supreme Court Rule 301 (Ill. Rev. Stat. 1977, ch. 110A, par. 301) provides that "[a]ll rights that could have been asserted by appeal or writ of error may be asserted by appeal." Prior to the enactment of the Civil Practice Act, one who was not a party to the action had no statutory right to appeal. (*In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 387, 359 N.E.2d 109.) He could, however, prosecute a writ of error by showing that he was privy to the record, or would be injured by the judgment, order, or decree complained of, or would be benefited by its reversal, or was competent to release errors. (*Upper Lakes Shipping Ltd. v. Seafarers' International Union of Canada* (1963), 40 Ill. App. 2d 392, 401, 189 N.E.2d 753.) In order to bring an appeal, the interest of a nonparty must be direct, substantial, and immediate, one which would be prejudiced by the judgment or benefited by its reversal. (*Flanagan v. Hulman* (1970), 121 Ill. App. 2d 382, 387, 257 N.E.2d 599; *Layfer v. Tucker* (1979), 71 Ill. App. 3d 333, 336, 389 N.E.2d 252.) A nonparty to an action is prejudiced or aggrieved in the legal sense when a legal right has been invaded or a pecuniary interest is directly, not merely indirectly, affected. (*American Surety Co. v. Jones* (1943), 384 Ill. 222, 229-30, 51 N.E.2d 122; *McDonald's Corp. v. Blotnik* (1975), 28 Ill. App. 3d 732, 734, 328 N.E.2d 897.) The nonparty's interest must appear in the record or be alleged in the points relied on for reversal. *Almon v. American Carloading Corp.* (1942), 380 Ill. 524, 530, 44 N.E.2d 592; *Nott v. Wolff* (1960), 18 Ill. 2d 362, 366, 163 N.E.2d 809.

■ Appellant contends that he brings this appeal derivatively on behalf of MSD in his relation as a taxpayer and represents the interests of MSD. With regard to appellant's alleged representation of MSD's interests, the record indicates that MSD had approved both the settlement agreement and the award of attorney's fees. The bringing of this appeal not only was unauthorized by MSD, but also was directly contrary to the provision of the settlement agreement in which MSD as well as O'Keeffe waived their right to appeal the fee award. This provision along with the other provisions of the settlement agreement had been approved as being fair, reasonable, and adequate. The trial court's approval of a settlement cannot be overturned on review unless taken as a whole, the settlement appears on its face so unfair as to preclude judicial approval. (*Gowdey v. Commonwealth Edison Co.* (1976), 37 Ill. App. 3d 140, 149-50, 345 N.E.2d 785.) Appellant has not alleged reasons why the waiver provision regarding the fee award was unfair. He argues only that as a taxpayer of a public body such as MSD he has a sufficient interest to appeal the fee award which he alleges was unwarranted and grossly excessive.

■ Although our research has disclosed no Illinois case directly on point,

it has generally been stated that one interested merely indirectly as a taxpayer is not so far aggrieved by a decision adverse to his contentions as to have the right of review from a judgment to which he was not a party. (4 C.J.S. *Appeal & Error* §183, at 559 (1957).) It has also been stated that unless the taxpayer has a direct pecuniary interest in the proceeding he has no right to appeal from a judgment in a proceeding to which he was not a party. (74 Am. Jur. 2d *Taxpayers' Actions* §47, at 260 (1974); 4 Am. Jur. 2d *Appeal & Error* §202, at 708 (1962).) Appellant's interest here is merely that of any other taxpayer. He has not shown how he has suffered any direct pecuniary loss. If aggrieved by the judgment, appellant would only be indirectly aggrieved in some indefinite manner in common with taxpayers generally. Appellant has failed to show a direct, substantial, and immediate interest requisite to bringing this appeal as a nonparty. (*Cf. People ex rel. Buchanan v. Mulberry Grove Community High School District No. 34-A* (1945), 390 Ill. 341, 61 N.E.2d 256; *Nicholas v. Lawrence* (1933), 161 Va. 589, 171 S.E. 673.) The motions to dismiss are allowed.

### III.

By way of motion, Ingram, relying on section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) asks this court to order appellant to reimburse them the amount of reasonable expenses, including attorney's fees, incurred on this appeal on the basis that the appeal is frivolous, harassing, and without foundation in law. Similarly, O'Keeffe requests that the costs involved in this appeal be assessed against appellant.

While the provisions of section 41 explicitly relate to trials, it has been held that expenses and attorney's fees incurred in defending a frivolous appeal or one brought without any legal foundation may be taxed on appeal. (*Manchester Insurance & Indemnity Co. v. Strom* (1970), 122 Ill. App. 2d 183, 190, 258 N.E.2d 150; *Federal Insurance Co. v. Maritime Shipping Agencies, Inc.* (1978), 64 Ill. App. 3d 19, 33, 380 N.E.2d 873.) The appellant has proceeded on a novel theory. He allegedly was seeking to protect the public interest, certainly a commendable task. He pursued his position in a litigious manner. And although we conclude he does not have standing to bring the appeal, we believe the cause to be reasonable under the facts of the record. We, therefore, deny Ingram's motion to assess costs pursuant to section 41.

Accordingly, we dismiss the appeal.

Appeal dismissed.

PERLIN, P. J., and STAMOS, J., concur.