**SEVENTH AVENUE BOUTIQUE, INC., Plaintiff,**

v.

**AETNA INSURANCE COMPANY and Small Business Administration, Defendants.**

**No. 83 C 2194.**

United States District Court, N.D. Illinois, E.D.

Oct. 31, 1983.

George C. Rabens, Rabens, Formusa & Glassman, Ltd., Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., Chicago, Ill., Mary S. Rigdon, Asst. U.S. Atty., for the Small Business Admin.

Daniel J. Leahy, Leahy & Eisenberg, Ltd., Chicago, Ill., for Aetna Ins. Co.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Seventh Avenue Boutique, Inc. ("Boutique")[1] sued Aetna Insurance Company ("Aetna") for payment under a business personal property hazard insurance policy (the "Policy"). Boutique also named its secured lender, Small Business Administration ("SBA"), as a defendant, asserting the loss payable clause under the Policy entitled SBA to all the insurance proceeds. Aetna has deposited $22,708.08 (the "Fund") with this Court in settlement of its liability under the Policy.

At issue is the priority of two competing claims to the Fund: those of SBA and Boutique's attorneys (the law firm of Rabens, Formusa & Glassman, Ltd. ("Rabens").[2] For the reasons stated in this

---

1. Initially the named insured under the policy in suit was Elsa Johnson, a sole proprietor doing business under the Boutique name. Later the policy was amended to reflect Boutique's change to corporate status.

2. Two other claims had been asserted but are no longer in the case:

1. After Boutique and Aetna had reached agreement on the amount of the Fund, the State of Illinois Department of Revenue filed a notice of state tax lien on Aetna. Aetna added the State as a party litigant, after which

memorandum opinion and order, SBA is entitled to the entire Fund.

### Facts [3]

In October 1981 SBA loaned Boutique $100,000 on condition that Boutique obtain an equivalent amount of hazard insurance on all its equipment and inventory,[4] with a standard loss payable clause [5] protecting SBA's interest as a secured party. SBA simultaneously took a security interest in Boutique's inventory, fixtures, accounts and proceeds.[6] In compliance with the loan agreement Boutique obtained the requisite insurance from Aetna effective July 21, 1981 through July 21, 1982.

On February 14, 1982 a fire at Boutique's premises destroyed much of the insured property. Sometime after the fire Boutique filed for bankruptcy, and the bankruptcy judge ordered the insurance proceeds abandoned due to Boutique's lack of equity in those proceeds.[7]

### Rabens' Claim

In support of its claim Rabens cites Illinois "equitable fund" cases, under which subrogors' attorneys have recovered fees from their clients' subrogees in proportion to the benefits received by the latter from the attorneys' services.[8] *Baier v. State Farm Insurance Co.*, 66 Ill.2d 119, 124, 5 Ill.Dec. 572, 574, 361 N.E.2d 1100, 1102 (1977), followed in *Lemmer v. Karp*, 56 Ill.App.3d 190, 13 Ill.Dec. 720, 371 N.E.2d 655 (2d Dist.1977); *Sobczak v. Whitten*, 75 Ill.App.3d 208, 30 Ill.Dec. 733, 393 N.E.2d 1080 (5th Dist.1979); *accord, Remsen v. Midway Liquors, Inc.*, 30 Ill.App.2d 132, 174 N.E.2d 7 (2d Dist.1961).

Those cases are inapposite to the present situation. SBA is *not* a mere subrogee to Boutique's rights against Aetna, for the loss payable clause (executed by Aetna's agent) grants SBA *direct* rights against Aetna wholly independent of Boutique. *City of Chicago v. Maynur*, 28 Ill.App.3d 751, 754, 329 N.E.2d 312, 315 (1st Dist. 1975); *Aetna State Bank v. Maryland Casualty Co.*, 345 F.Supp. 903, 905 (N.D. Ill.1972). SBA's independent contractual relationship places it in a different position from the derivative situation of a mere subrogee, whose interest is necessarily dependent on the subrogor's actual recovery from the tortfeasor. *See Glidden v. Farmers Automobile Insurance Ass'n*, 57

---

the parties advised this Court the State's claim had been withdrawn.

2. Rabens also asserted a claim on behalf of Boutique's public adjusters (Lash, Warner & Associates, Inc., "Lash") for 10% of the gross insurance proceeds, relying on the same theory as Rabens' own claim. This opinion's analysis would therefore apply equally to Lash's claim. However SBA has stated (R.Mem. 1 n. 1) Lash will be reimbursed by SBA because Lash's services benefited SBA. Accordingly Lash's claim need not be dealt with.

3. Boutique and all claimants agree on the factual setting.

4. Under Paragraph 3(f)(2) of the SBA-Boutique Loan Agreement (the "Agreement"):

Borrower shall provide and maintain hazard insurance coverage on all equipment and inventory located at 328 N. Michigan Ave., Chicago, IL 60601
Amount: $100,000.00
with *lender's* loss payable clause in favor of Bank and Small Business Administration. Such clause must provide that the interest of Bank/SBA shall not be invalidated by any act or neglect of the mortgagor or owner of the insured property.

5. That clause is reproduced as Appendix A.

6. SBA had previously filed a financing statement August 17, 1981 and has thus had a perfected security interest at all times relevant to these proceedings. Ill.Rev.Stat. ch. 26, §§ 9–203, 9–302. Because of the disposition of this case, this Court need not consider the effect of a perfected security interest in proceeds.

7. *In re Elsa Johnson d/b/a Seventh Avenue Boutique*, No. 83 B 6844 (N.D.Ill. Aug. 3, 1983).

8. Suppose for example a hazard insurer pays its insured $4,000 pursuant to the insurance contract, after which the insured recovers $10,000 from the third party tortfeasor. Absent the equitable fund doctrine, the insurer (as subrogee) would receive $4,000 and the insured party (the subrogor) would pay the entire amount of attorney's fees from the remaining $6,000. If the equitable fund doctrine is applied, however, the insurer-subrogee would recover $4,000 minus its proportionate share of the insured-subrogor's attorneys' fees.

Ill.2d 330, 338, 312 N.E.2d 247, 251–52 (1974).

In applying the equitable fund doctrine, the Illinois courts recognize the subrogee's inherent reliance on the subrogor's efforts. For just that reason those courts have restricted such application to insurance subrogation cases or class actions. *McKee-Berger-Mansueto, Inc. v. Board of Education of the City of Chicago,* 691 F.2d 828, 835–36 (7th Cir.1982); *Maynard v. Parker,* 54 Ill.App.3d 141, 145, 11 Ill.Dec. 898, 901, 369 N.E.2d 352, 355 (3d Dist.1977), *aff'd,* 75 Ill.2d 73, 25 Ill.Dec. 642, 387 N.E.2d 298 (1979); *Boehm and Weinstein, Chtd. v. City of Chicago,* 62 Ill.App.3d 68, 70, 19 Ill.Dec. 489, 491, 379 N.E.2d 4, 6 (1st Dist. 1978).

Rabens argues its efforts resulted in benefit to SBA. SBA disputes that claim (R.Mem. 2–3). But even if Rabens were correct, under Illinois law that would not be enough to saddle SBA with Boutique's attorneys' fees. *See McKee-Berger-Mansueto,* 691 F.2d at 835; *Kaplan v. Mahin,* 79 Ill.App.3d 848, 851–52, 35 Ill.Dec. 481, 484–85, 399 N.E.2d 315, 317–18 (1st Dist. 1979). This Court cannot extend the "equitable fund" doctrine beyond its Illinois boundaries.

### Conclusion

SBA's right to the Fund is superior to Rabens' claim. Accordingly, the Clerk of this Court is ordered to pay the entire Fund to SBA pursuant to its interest under the loss payable clause. This is a final judgment disposing of all claims in this action.

### Appendix A

Loss or damage, if any, under this policy, shall be payable to Small Business Administration, an Agency of the United States Government (hereinafter referred to as "SBA"), as lender, mortgagee or owner of obligations secured by trust deed or as secured party, as its interest may appear, or to its successors and assigns, and this insurance, as to the interest of SBA only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy.

Provided also, that SBA shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of SBA, and unless permitted by this policy, it shall be noted thereon and SBA shall, on demand, pay the premium, if any, for such increased hazard for the term of the use thereof, but payment of such premium by SBA shall be only a condition precedent to recovery by SBA under this policy and agreement, and SBA shall not be otherwise obligated to pay such premium.

In the event the property covered by this policy is designated therein as the "contents" of a certain building or similar structure, then this policy shall apply to and cover all machinery, equipment, furniture, fixtures and inventory (and any other property customarily so designated) of the insured in which SBA holds a security interest, any other provision in said policy to the contrary notwithstanding.

This Company reserves the right to cancel this policy at any time as provided by its terms but in such case this policy shall continue in force for the benefit only of SBA for ten days after receipt of written notice to SBA of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement. In the event of cancellation of this policy, the unearned portion of all premiums received by this Company from any source shall be deemed to be the property of SBA and shall be remitted to SBA without set-off of any kind; however, the unearned portion of such premiums may be applied for the purpose of providing substantially similar insurance for the benefit of SBA from this Company covering the same property.

Whenever this Company shall pay SBA any sum for loss or damage under this policy, and shall claim that as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all rights of the party to whom such payment shall be made, under all securities held as collateral for the debt due or may at its option, pay to SBA the whole principal due or to become due on the debt, with interest accrued thereon to the date of payment and shall thereupon receive a full assignment and transfer of all securities held as collateral. In any event, no right of subrogation shall impair the right of SBA to recover the full amount of its claim.