**Earl Ross, et al., Plaintiffs-Appellees, v. 311 North Central Avenue Building Corporation, G. J. Nikolas, et al., Defendants-Appellants.**

**Gen. No. 54,815.**

First District, First Division.

September 21, 1970.

---

338

Alphonse Cerza, of Chicago, for appellants.

David S. Wald, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a class action brought by plaintiffs, minority stockholders in the defendant building corporation. In a nonjury trial, the court entered a decree which found that in the use of surplus funds of the corporation, the acts of the defendant directors, who were in control of the corporation, were fraudulent and oppressive as against the minority stockholders. The relief granted included liquidation of the defendant corporation and attorney's fees for plaintiffs. In this appeal from the decree, the contentions of defendants are primarily based on the premise that the conduct of the individual defendants did not constitute fraud and no damage resulted to anyone.

The material facts in this case are not in dispute and are substantially set forth in the decree which follows:

## DECREE

This cause having come up for trial and testimony having been taken and arguments having been made by all counsel, the Court makes the following findings:

1.  That the suit by the plaintiffs is a proper class action in behalf of themselves and the other shareholders of the 311 North Central Avenue Building Corporation.

2.  That the plaintiffs directly own 806 shares of the capital stock of the said corporation, and represent by their class action approximately 34% of the capital stock of said corporation.

3.  That the individual defendants, G. J. Nikolas, Jr., G. J. Nikolas, III, and Robert C. Nikolas, and other relatives and members of their families, own approximately 64% of the shares of stock issued by said corporation, and are the sole directors and officers of said corporation.

4. That the said corporation is the owner of the building commonly known as an apartment hotel.

5. That the said individual defendants have operated and managed said real estate for and in behalf of the corporation, for a number of years.

6. That sometime in the year 1967, the individual defendants withdrew from the said corporation the sum of $48,597.16, and purported to loan same to a corporation known as S. W. Corner Washington and Harvey Corporation, the shares of which were owned by the said individual defendants and their families, and the said individual defendants were the directors and officers of said corporation.

7. Defendants maintain that the loan to the said S. W. Corner Washington and Harvey Corporation was evidenced by a second mortgage of said corporation, payable in 20 years, without prepayments, bearing interest at 6% per annum; that said loan was used to reduce the amount of a first mortgage upon the property of said corporation from $250,000.00 to $200,000.00. No such second mortgage was produced, none was recorded, no evidence was offered of any person, lawyer or otherwise, who prepared such a mortgage, nor were minutes of a meeting of the directors produced authorizing the loan; no proof was offered of any insurance to cover protection for this mortgage, no opinion of title showing the condition of the title was produced. I find that no such second mortgage was ever executed.

8. Even if there had been such a second mortgage executed, the loan to said S. W. Corner Washington and Harvey Corporation was frozen for the full term of 20 years.

9. The minority shareholders of the 311 North Central Avenue Building Corporation were not informed of this loan, excepting that in the report to shareholders for the year 1967 under "investments" appeared an item "Second Mortgage in the sum of $49,597.12." The fact that the loan was made to a corporation owned and controlled by the individual defendants and their families, was not disclosed in any of the reports issued to the shareholders of the

defendant corporation. Upon learning of the said loan, the plaintiffs filed this suit on April 10, 1968; summons were served on the defendants on April 15, 1968, and the money was replaced in the account of the defendant corporation on April 24, 1968, purporting to represent the proceeds of sale of the alleged second mortgage at par.

10. The individual defendants contend that the purpose of loaning the money on the second mortgage was to increase the income from 4½% on previous investments to a 6% return.

11. The defendants contend further that the funds were not distributed to the shareholders as a liquidating dividend, but was kept as a reserve for future needs of the corporation. Obviously, loaning the money for a period of 20 years without prepayments, would make it impossible to use these funds for future needs of the corporation. It is my opinion that if the directors were willing to freeze the loan for a 20 year period, the funds were not needed for corporate purposes, and were available for a liquidating dividend.

12. The evidence is clear that a commission or bonus for a second mortgage loan for a straight period of 20 years, at 6% interest, would justify a commission of not less than $15,000.00.

13. The contention of the defendant that they gained no benefit from the loan, because there was no reduction in the monthly payments on the first mortgage, which was reduced by the loan is not persuasive. The loan enabled the defendants to retire the first mortgage many years sooner, relieving them of the necessity of payments of principal for a number of years after the first mortgage is retired.

14. The return of the funds after the commencement of the suit does not negate the effect of the fraud.

15. That the loan to the S. W. Corner Washington and Harvey Corporation, a corporation owned and controlled by the individual defendants and their families, was a fraud upon the 311 North Central

Avenue Building Corporation, and upon the minority stockholders.

16. That no second mortgage was ever executed and that, in falsely representing that there was such a second mortgage, they compounded the fraud.

17. The plaintiffs have rendered a beneficial service to all the shareholders of the corporation in filing the suit and procuring a refund of the funds improperly diverted by the defendants, and are entitled to compensation for attorneys' fees and other services and expenses.

18. That the conduct of the defendants was oppressive.

IT IS THEREFORE ORDERED:

1. That the prayers to remove the board of directors and to deny the defendants to vote their stock is hereby denied.

2. That the funds returned to the corporation, approximately Forty-nine Thousand ($49,000.00) Dollars, and presently invested in Certificates of Deposit be kept intact, and not be used, changed or distributed without leave of Court.

3. That the defendants be and are hereby removed from management of the aforesaid 311 North Central Building and that the Court retain jurisdiction to appoint a fair, impartial and independent management to manage the aforesaid property.

4. That the aforesaid corporation be liquidated and its assets sold, but that said sale be deferred until a time when the market becomes more propitious and that the Court retain jurisdiction for the purpose of determining the time and place and manner of such sale.

5. That plaintiffs be reimbursed by defendants for all costs and monies expended by them for expenses and services in prosecuting this lawsuit and that defendants pay to David S. Wald, Attorney for the plaintiffs, the sum of Five Thousand ($5,000.00) Dollars as attorney's fees to date.

6. The Court finds there is no just reason for delaying enforcement or appeal of this decree.

In the appeal from this decree defendants contend:

1. The conduct of the individual defendants did not constitute fraud because there was no intention to cheat another and no damage resulted to anyone.
2. The controversy in this matter was moot at the time of the trial.
3. The trial court could not order a liquidation of the corporation on the ground of fraudulent and oppressive conduct by the directors since the acts of the directors were not fraudulent or oppressive.
4. The law imposes upon the directors of a going corporation that has been operated for years at a profit the duty of managing its affairs and determining how surplus funds shall be used.
5. Attorney's fees are allowed in a chancery case only when provided by statute or a benefit has been received as a result of the services rendered.
6. The motion for judgment on the face of the pleadings should have been allowed in this case.
7. The plaintiffs are in this court with unclean hands, filed the suit in bad faith and should not have pursued the matter further than the deposition for discovery, therefore, plaintiffs should pay the costs, expenses, and attorney's fees expended by the defendants.

We have examined defendants' contentions and authorities cited in support thereof. In view of our conclusion that this record amply sustains the trial court's findings of fraudulent and oppressive acts, it would serve no useful purpose to discuss or distinguish the circumstances here from those in each of the cases cited by defendants or the factual variations affecting the disputed transactions in each of those cases.

■ At the outset, we find no merit in defendants' contention that their motion for judgment on the face of the pleadings should have been allowed in this case, or that the plaintiffs are in court with unclean hands and

in bad faith. The acts of the defendants, which the trial court found to be fraudulent or oppressive, were in no way chargeable to acts of the plaintiffs.

Initially considered is defendants' contention that the conduct of the individual defendants did not constitute fraud. A summary of the pertinent facts shows that on January 25, 1967, the individual defendants withdrew from the corporation approximately $49,000 and purported to loan this money to a corporation known as "S. W. Corner Washington and Harvey Corporation," the shares of which were owned by the individual defendants and their families, and the individual defendants were the officers and directors of the second corporation. The loan was supposedly evidenced by a "second mortgage" upon the property of the second corporation, payable in twenty years, nonamortized, and bearing interest at 6% per annum, payable monthly. There was no disclosure of this transaction until approximately a year later. The annual statement sent to the stockholders shortly after January 1, 1968, contained an item: "Investment—second mortgage $48,597.16." When one of the plaintiffs called George Nikolas, III, the defendant president of the corporation, and asked him about the item, Mr. Nikolas stated, "I can do anything I see fit with this money." No second mortgage was produced, none was recorded, and no evidence was offered as to who prepared the loan. The trial court found that no such second mortgage was executed or ever existed.

A witness for plaintiffs, Peter K. Lannon, who had extensive experience in real estate appraisals and mortgages, testified that a "second mortgage" such as the one purportedly made by the defendants could not have been secured in ordinary business channels at the time this alleged mortgage was made, and if a second mortgage of this nature was made, the commission or bonus for such a loan would not be less than $15,000.

■ Plaintiffs' authorities include Shlensky v. South Parkway Bldg. Corp., 19 Ill2d 268, 166 NE2d 793 (1960), where our Supreme Court discussed the duties and liabilities of corporate directors and officers in transactions similar to the instant case. There the court

cited the case of Geddes v. Anaconda Copper Mining Co., 254 US 590 (1921), and quoted therefrom the following (p 282) :

"The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation; and where the fairness of such transactions is challenged, the burden is upon those who would maintain them to show their entire fairness; and where a sale is involved, the full adequacy of the consideration. Especially is this true where a common director is dominating in influence or in character. This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in the soundest morality, and we now add, in the soundest business policy. [254 US at p 599]."

In Shlensky, the court said (pp 280–81) :

". . . transactions between corporations with common directors may be avoided only *if unfair,* and that the directors who would sustain the challenged transaction have the burden of overcoming the presumption againt the validity of the transaction by showing its fairness."

And on page 283, the court stated the factors to be considered in determining fairness are:

"While the concept of 'fairness' is incapable of precise definition, courts have stressed such factors as whether the corporation received in the transaction full value in all the commodities purchased; the corporation's need for the property; its ability to finance the purchase; whether the transaction was at the market price, or below, or constituted a better bargain than the corporation could have otherwise obtained in dealings with others; whether there was a detriment to the corporation as a result of the transaction; whether there was a possibility of cor-

346

porate gain siphoned off by the directors directly or through corporations they controlled; and whether there was full disclosure—although neither disclosure nor shareholder assent can convert a dishonest transaction into a fair one."

■ In Majewski v. Gallina, 17 Ill2d 92, 160 NE2d 783 (1959), our Supreme Court set forth the guidelines for determining fraud and said (p 99):

"There is no general rule for determining what facts will constitute fraud; whether or not it is found depends upon the special facts of each particular case. While fraud is never presumed, a conspiracy, as alleged herein, is rarely susceptible of direct proof, but must, very nearly always from the nature of things, be established by circumstantial evidence and legitimate inferences arising therefrom. . . . These inferences depend largely upon the common-sense knowledge of the motives and intentions of men in like circumstances."

Also, at page 100:

"Thus, fraud may be inferred from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation, the intimacy and relation of the parties at the time of the commission of the acts, and generally all the circumstances preceding and attending the culmination of the claimed conspiracy."

■ ■ In determining the propriety of a decree, a reviewing court is not justified in disturbing the findings unless they are manifestly and palpably wrong or against the weight of the evidence. (2 ILP, § 787, p 756.) After examining the circumstances surrounding the loan to S. W. Corner Washington and Harvey Corporation, we conclude that the finding by the trial court that the loan "was a fraud upon the 311 North Central Avenue Building Corporation, and upon the minority stockholders" is not against the manifest weight of the evidence and therefore should be affirmed. This conclusion also ap-

plies to the finding by the court "that the conduct of the defendants was oppressive."

■ Considered next is defendants' contention that the controversy was moot at the time of the trial. Defendants argue that because the funds which were extracted were paid back to the defendant corporation, no controversy existed and any prior misconduct was cured. We do not agree. The central issue concerning the transaction in question was whether defendants' conduct was a fraud as to the corporation and its minority stockholders. The subsequent return of the funds two weeks after the suit was filed and ten days after summons did not negate the fraud committed initially by the defendants' actions nor the remedies available either by statute or in equity for corporate mismanagement by those who are entrusted with it. The trial court considered the question at length, and in denying defendants' contention that the matter was moot the court said: "It cures what? Their good faith, their honesty, their duty as fiduciaries to the other stockholders? Does that cure it?" We agree with the court's remarks and find no merit to defendants' contention that the question was moot at the time of the trial.

■ ■ Defendants next contend that the trial court had no power to liquidate the assets of the defendant corporation except under statutory authority. This assertion is based on the premise that defendants' actions were not fraudulent or oppressive. As previously noted, the trial court found that the defendants acted fraudulently and also found their conduct was oppressive. Section 86 of the Illinois Business Corporations Act (Ill Rev Stats, c 32, ¶ 157.86) reads in pertinent part:

> "Courts of equity shall have full power to liquidate the assets and business of a corporation:
>
> > "(a) In an action by a shareholder when it is made to appear
> >
> > > ". . .
> > >
> > > "(3) That the acts of the directors or those in control of the corporation

> are illegal, oppressive, *or* fraudulent; or
>
> "(4) That the corporate assets are being misapplied or wasted." (Emphasis added.)

The statute in paragraph (a), subparagraph (3), uses the correlative "or" implying that the court's authority may be invoked when any one of the acts so stated is committed.

In Gidwitz v. Lanzit Corrugated Box Co., 20 Ill2d 208, 170 NE2d 131 (1960), where the court dealt with the same statutory provision, it is said (p 212):

> "There appears to be no claim that the acts of the directors or officers in this case are 'illegal' or 'fraudulent,' but *only* that the 'deadlock' is 'oppressive' to the plaintiffs as shareholders . . . ." (Emphasis added.)

The court continued (pp 214–215):

> "We have held that the word 'oppressive' as used in this statute, does not carry an essential inference of imminent disaster; it can contemplate a continuing course of conduct. The word does not necessarily savor of fraud, and the absence of 'mismanagement, or misapplication of assets,' does not prevent a finding that the conduct of the dominant directors or officers has been oppressive. It is not synonymous with 'illegal' and 'fraudulent.' Central Standard Life Ins. Co. v. Davis, 10 Ill2d 566."

Moreover, the court stated (pp 220–221):

> "It is not necessary that fraud, illegality or even loss be shown to exhibit oppression of plaintiffs and their interest in the corporation. Corporate dissolution is a drastic remedy that must not be lightly invoked. . . . Nevertheless, when oppression is positively shown, the oppressed are entitled to the protection of the law."

On our analysis of the evidence, we find the defendants failed to establish the fairness of the challenged transac-

tion. The finding by the trial court that the acts of the directors of the defendant corporation were fraudulent or oppressive was sufficient to permit the trial court to use its authority under section 86 of the Business Corporations Act. We conclude the statutory liquidation was properly ordered.

██ ██ Considered next is defendants' contention that the directors of a going corporation have the duty of managing its affairs and determining how surplus funds shall be used. We agree as long as they do not use the funds fraudulently or oppressively. In Hall v. Woods, 325 Ill 114, 156 NE 258 (1927), it is said (p 138):

> "[A] court of chancery will not interfere . . . when there is no charge of fraud or gross mismanagement resulting or likely to result in loss to the corporation or to any of the stockholders."

██ We conclude that after the trial court found that the acts of the defendants were both fraudulent and oppressive, the court properly removed the defendants from managing the corporation until proper liquidation might be undertaken. Ritter v. Ritter, 381 Ill 549, 46 NE2d 41 (1943).

Defendants next contend that the awarding of costs and attorney's fees to the plaintiffs was improper in this case. They rely on the rule that in the absence of statute, costs, expenses and attorney's fees are not allowed to the successful litigant. They also point out that the Illinois Business Corporations Act does not provide for the allowance of these fees. Ill Rev Stats, c 33, § 18, states:

> ". . . in all other cases in equity, not otherwise directed by law, it shall be in the discretion of the court to award costs or not; and the payment of costs, when awarded, may be compelled by execution."

Defendants also maintain that a derivative suit cannot be filed by shareholders without first making a demand on the corporation officers to file such a suit. (Goldberg v. Ball, 305 Ill App 273, 27 NE2d 575 (1940).) Defendants state that had a demand been made on the

defendants, the named plaintiffs would have been advised of the decision made at the directors' meeting and the suit would not have been necessary, and "once suit was filed and the plaintiffs learned from the verified amended answer, and by deposition for discovery that the loan had been repaid and the corporation had invested the funds in certificates of deposit, there was no need for continuing with the litigation."

Plaintiffs contend that it is a well-established rule in Illinois that courts of equity have the authority to order an allowance of solicitor's fees and costs expended, to a party who has at his own expense maintained a successful suit for the preservation, protection or increase of the common fund or common property. Plaintiffs argue that the money was returned through the efforts of the plaintiffs and their attorney, and at no time prior to the filing of this lawsuit did defendants indicate to plaintiffs a so-called change of heart. Plaintiffs assert, also, that defendants "had consistently taken the position in their conversations with Earl Ross, plaintiff, and his attorney as late as the stockholders meeting that they could do as they wished with the reserve funds."

Authorities on this point include First Nat. Bank of Chicago v. LaSalle-Wacker Bldg. Corp., 280 Ill App 188 (1935), where it is said (p 197):

> "We think the rule is firmly established that a court of equity or a court in the exercise of equitable jurisdiction will, in its discretion, order an allowance of solicitor's fees to a party who, at his own expense, has maintained a successful suit for the preservation, protection or increase of a common fund or of common property, or who has created at his own expense or brought into court, a fund in which others may share with him."

In Bingham v. Ditzler, 320 Ill App 88, 49 NE2d 812 (1943), it is said (p 95):

> "The general rule is that if the plaintiff in a stockholders' suit is successful and the benefit goes to the corporation, he is entitled to recover his necessary expenses and disbursements, including an attorney's fee."

And at page 98:

> "We think the rule is firmly established that a court of equity . . . will in its discretion order an allowance of solicitor's fees to a party who, at his own expense, has maintained a successful suit for the preservation, protection, or increase of the common fund or of common property, or who has created at his own expense or brought into court, a fund in which others may share with him."

In LaSalle Nat. Bank v. MacDonald, 2 Ill2d 581, 119 NE2d 266 (1954), it is said (p 589):

> "Under the applicable statute, costs in chancery cases, with exceptions not now material, rest in the discretion of the court, (Ill Rev Stat 1953, chap 33, par 18,) to be exercised according to equitable rules and principles."

In Lee v. City of Chicago, 31 Ill2d 252, 201 NE2d 361 (1964), it is said (p 256):

> "[The statute] provides that the costs in chancery cases are in the discretion of the court—a discretion to be exercised according to equitable rules and principles. . . . As a general rule the successful parties should not be required to pay any portion of the costs, where there is no equitable ground upon which to base an apportionment."

■ We conclude that attorney's fees and costs, in a matter such as this, may be awarded in the discretion of the court according to equitable rules and principles, and generally they must come from the fund being protected by the suit. In the instant case we think the individual defendants, "according to equitable rules and principles," could be properly required to pay either all or part of the costs and solicitor's fees. 31 Ill2d 252, 256.

■ Plaintiffs in essence are prosecuting this suit on behalf of the defendant corporation. In ordering that plaintiffs be reimbursed for their solicitor's fees and costs, the court made no apportionment, if any was intended, between the defendants. The defendants made no showing or attempt to show an equitable ground for

apportionment. We think the trial court should consider and determine the apportionment between defendants of the attorney's fees and court costs here, because we consider there is an equitable ground upon which to base such an apportionment.

We conclude that the decree of the trial court should be affirmed, and the question of apportionment among defendants of plaintiffs' attorney's fees and court costs should be considered by the trial court and a finding made in the future proceedings in this case.

The decree of the trial court is affirmed, as noted, and the cause is remanded for further proceedings and in accordance with the views expressed herein.

Affirmed and remanded with directions.

BURMAN, P. J. and ADESKO, J., concur.