484

(No. 53137

CLARICE R. SALTIEL v. SIDNEY R. OLSEN, Recorder of Deeds and Registrar of Titles, *et al.* (William J. Scott, Appellant and Cross-Appellee; Harry A. Young, Jr., *et al.*, Appellees and Cross-Appellants).

*Opinion filed June 26, 1981.*

Tyrone C. Fahner and William J. Scott, Attorneys General, of Springfield (Robert G. Epsteen, Special Assistant Attorney General, of Chicago, of counsel), for appellant.

Bilandic, Neistein, Richman, Hauslinger & Young, Ltd., of Chicago (Harry A. Young, Jr., and Lee J. Schwartz, of counsel), for appellee.

Sidney Z. Karasik, of Chicago, appellee, *pro se.*

MR. JUSTICE WARD delivered the opinion of the court:

In a prior appeal of this case, reported as *Saltiel v. Olsen* (1979), 77 Ill. 2d 23, we affirmed a judgment of the

circuit court of Cook County in favor of the plaintiff, Clarice R. Saltiel, holding that section 3 of the Real Estate Transfer Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 1003), as it stood prior to its amendment in 1978 (1978 Ill. Laws 985), violated article VII, section 9(a), of the Illinois Constitution. After the filing of our opinion, further proceedings were held in the circuit court in which the court awarded attorney fees to the plaintiff. The Attorney General, who had been permitted to intervene in the post-appeal proceeding, appealed to the appellate court, and we allowed his motion for a direct appeal under Rule 302(b) (73 Ill. 2d R. 302(b).

The proceeding began with the filing of a complaint in the circuit court of Cook County by the plaintiff, an Illinois taxpayer, on her own behalf and on behalf of all other taxpayers, against the defendants, Sidney R. Olsen, as the recorder of deeds and registrar of titles for Cook County, and Edward J. Rosewell, as the Cook County treasurer. The complaint, which was filed February 16, 1978, sought a judgment enjoining the defendants from retaining for the county's use one half of the proceeds received from the sale of revenue stamps, and directing the defendants to pay that portion of the proceeds to the Department of Revenue. The Department of Revenue was not made a party to the case. The defendants were represented by the State's Attorney of Cook County.

On June 20, the circuit court issued a temporary injunction requiring the defendants to pay the tax proceeds retained by the county into a special fund administered by a court-appointed trustee. The sums subject to the injunction continued to accumulate until August 7, when an amendment to section 3 deleted the provision challenged by this suit. On August 24, when the sums in dispute were turned over to the trustee, they amounted to $516,117. Thereafter the trustee invested the fund in interest-bearing obligations, and by October 31, 1980,

the fund had grown to $621,212, according to a statement in the trustee's brief which the Attorney General does not challenge.

The circuit court's judgment in favor of the plaintiff was entered October 4, 1978. In it the court retained jurisdiction of the cause to determine what sums, if any, should be awarded from the fund for the fees and expenses of the plaintiff's attorneys and those of the trustee, and to deliver what remained to the Department of Revenue or the State Treasurer. On October 31 the defendants filed a notice of appeal from the judgment, and the appeal was transferred to this court under Rule 302(b). On November 8 the plaintiff's attorneys filed a petition in the circuit court for fees and costs. A like petition was filed by the trustee. The defendants moved that disposition of these petitions be deferred pending the outcome of the appeal. The defendants also filed objections to the allowance of attorney fees in which they contended, *inter alia*, that any allowance would violate the sovereign immunity of the State.

No action was taken by the circuit court on the matter of fees while the case was pending on appeal. On September 24, 1979, shortly after this court's opinion was filed, the Attorney General filed a petition in circuit court to intervene, and also filed objections to the petitions for fees. The Attorney General represents that he never received any notice of the institution of this litigation, of the judgment of the circuit court, or of the decision of this court, and that he did not become aware of the latter until a few days before he filed his petition to intervene.

The circuit court granted the petition to intervene. Its order provided that the Attorney General should be bound by all prior judgments and orders, and that he might raise "only the issue of the right to fees and the amount thereof, if any." The circuit court overruled the Attorney General's objections, and on October 30, 1979,

it entered an order awarding the plaintiff's attorneys $108,000 in fees and $904 in costs, and awarding the trustee $6,794 in fees and $478 in costs, for a total allowance of $116,176. The trustee was directed to hold the balance of the fund until further order of the court. The Attorney General's appeal followed. The plaintiff's attorneys have cross-appealed, seeking an award of $148,563 in fees, the amount prayed for in their petition.

The chief ground urged by the Attorney General for reversal of the circuit court is that an award of attorney fees and costs, whatever the amount, violates the sovereign immunity of the State. Sovereign immunity, which formerly had a constitutional basis (Ill. Const. 1870, art. IV, sec. 26), was abolished by article XIII, section 4, of the Constitution of 1970, "[e]xcept as the General Assembly may provide by law ***." Sovereign immunity thus may now be asserted only if there is some statute which confers it. The statute on which the Attorney General bases his claim of sovereign immunity here is the act (Ill. Rev. Stat. 1979, ch. 127, par. 801) which declares "the State of Illinois shall not be made a defendant or party in any court" except by way of an action brought in the Court of Claims under section 8 of the statute creating that body (Ill. Rev. Stat. 1979, ch. 37, par. 439.8).

A determination of whether sovereign immunity is applicable in the present case requires an analysis of the decisional law of this State as to the right of the prevailing party in civil litigation to recover attorney fees from some other source, be it the State or a private person. Beginning with its decision in *Ritter v. Ritter* (1943), 381 Ill. 549, this court has followed the prevailing rule in the United States that in the absence of a statute or an agreement the successful litigant in a civil action may not recover attorney fees or the ordinary expenses of litigation from his adversary. (See 1 S. Speiser, Attorneys Fees sec. 12:3 (1973).) This rule has been adhered to in

later decisions. See, *e.g., House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 51-52; *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 442; *cf. City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108.

On the other hand we have held in a number of cases that a successful plaintiff may recover attorney fees from other persons to the extent that as an incident to the litigation a fund was created from which the fees could be drawn. Many of these cases are of particular pertinence here since they involved a statute or a local ordinance which diverted the proceeds of tax collections from one governmental entity to another and which was held unconstitutional for that reason. See, *e.g., Flynn v. Kucharski* (1974), 59 Ill. 2d 61; *City of East Peoria v. Tazewell County* (1975), 60 Ill. 2d 263; *Leader v. Cullerton* (1976), 62 Ill. 2d 483; *Fiorito v. Jones* (1978), 72 Ill. 2d 73.

These decisions are not inconsistent with the rule of *Ritter v. Ritter,* nor are they exceptions to that rule, as the parties would characterize them. In these cases a plaintiff's attorney fees and expenses are not charged against the adversary because the latter lost the case. On the contrary they are charged against a person or an entity that is benefited by the fund which was created or preserved by the plaintiff's success in causing a tax to be invalidated. While the beneficiary thus charged may be a member of the class on whose behalf the suit was brought, the beneficiary may also be the governmental unit whose officer was the defendant in the action.

*Flynn v. Kucharski* (1974), 59 Ill. 2d 61, is illustrative. As is more fully explained in the opinion filed on a prior appeal (*Flynn v. Kucharski* (1970), 45 Ill. 2d 211), this case involved a method of tax collection under which a portion of the taxes collected by township collectors from residents of Cook County living outside the city of Chicago could be diverted from general countywide

purposes to local purposes. Certain taxpayers of the city of Chicago brought a class action against the Cook County collector and several township collectors, which terminated in a decision that the statute was invalid. In the course of the litigation the circuit court had ordered the township collectors to deposit the disputed monies with a court-appointed trustee for ultimate payment to the county. Over the objection of the county treasurer the circuit court awarded fees out of this fund to the plaintiffs' attorneys. Although we found the amount of the fee excessive and reduced it, we upheld the principle that payment of attorney fees could properly be made from the fund. Although actions on the part of the Cook County collector formed a part of the invalid system of tax collections, the county was the immediate beneficiary of the plaintiff's victory, since its treasury was thereby augmented. It was for that reason that the county's windfall could properly be reduced by the attorney fees and expenses incident to its creation.

In *City of East Peoria v. Tazewell County* an ordinance authorized the county to impose upon municipalities and other local taxing districts a service charge for the collection of taxes. Several of the 140 local taxing districts brought a class action which resulted in a judgment that the ordinance was invalid. Pending final disposition of the case the circuit court had ordered the county to sequester the sums collected but not yet spent for return to the local districts. We held that the plaintiffs could recover attorney fees out of this fund from the other local districts in proportion to the extent to which the latter had benefited from the invalidation of the county's collection charge. Some municipalities who objected to the allowance of the fees argued that whatever benefit was received by a taxpayer of a local taxing district was offset by the benefit which would have been received had the county been permitted to retain the funds in question. This court

rejected that argument, however, since the benefit would not be the same for all taxpayers (60 Ill. 2d 263, 265-66).

The doctrine that a plaintiff's attorney fees may be charged against a fund which has been created by his success in invalidating a tax is subscribed to by other jurisdictions as well as Illinois. See Annot., 89 A.L.R. 3d 690 (1979); 1 S. Speiser, Attorneys Fees sec. 11:1 (1973); Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds,* 87 Harv. L. Rev. 1597 (1974).

From what has been said it is clear that in the present case no objection to the allowance of attorney fees could be sustained if the governmental entity entitled to the fund were other than the State of Illinois. The Attorney General argues that the class of taxpayers on behalf of whom the action was brought was not benefited since the amount of the Real Estate Transfer Tax to be paid by individuals has not been reduced, no refunds to taxpayers were provided, and Cook County will have to generate additional revenue to make up for the monies which have been declared to belong to the State. The argument is reminiscent of that which was made and rejected in *City of East Peoria v. Tazewell County* (1975), 60 Ill. 2d 263, referred to above. The Attorney General's argument also overlooks that the circuit court defined the class in this action as the class of Illinois taxpayers, not the class of Illinois taxpayers living in Cook County. While some question might be raised as to whether all persons who are Illinois taxpayers constitute a "class," that question is not now open, for the court defined the class before the Attorney General's intervention, and his intervention was made subject to orders already entered in the case.

We do not consider that the statutory immunity of the State from being made a party in any court requires a reversal of the judgment of the circuit court. Although the case did not involve the question of attorney fees, *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, supports

our conclusion in this regard.

In that case the State, as the result of an erroneous determination by its Director of Revenue as to the effective date of an amendment to the provisions of the Illinois Municipal Code authorizing the State to charge municipalities for the collection of the municipal retailers' occupation tax and municipal service occupation tax (Ill. Rev. Stat. 1979, ch. 24, pars. 8—11—1, 8—11—5), had withheld from the city of Springfield for a 6-month period an amount of money greater than that permitted. The city and other municipalities similarly affected filed an action against the Director for a judgment declaring that his interpretation of the amendment was incorrect, and asking reimbursement of the amount wrongfully withheld out of funds being currently collected.

The defendant's contention that the relief sought made this action a suit against the State was rejected. After reviewing several cases the court stated:

"Our review of the foregoing cases leads us to conclude that the issues involved in the instant case (the effective date of a statute) and the relief requested (a declaratory judgment and the with-holding of certain funds from the State treasury) do not render the instant case a suit against the State. That the relief requested necessarily will have an impact on the State's General Revenue Fund is not dispositive." 74 Ill. 2d 117, 126.

The conclusion reached by the court is in no way vitiated by the holding in the sequel, *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, that interest on the amounts withheld could not be awarded.

The facts in *City of Springfield* presented a far stronger claim for sovereign immunity than those of the present case. Here the money retained by Cook County was never in the State's hands, and no claim to it was ever asserted during the seven years since the law in question was

enacted. This case is one of many in which a constitutional flaw has been brought to light and corrected only by a taxpayer's private action. Few taxpayers could afford to finance out of their own pockets the proceedings necessary to mount a successful challenge to legislative enactments, particularly the often intricate provisions of the Revenue Code, and the position taken by the Attorney General would thus place taxpayers as well as local governments at the mercy of State officers in charge of tax collections. "Neither our constitution nor any act of the General Assembly contemplates that State officers be given such unlimited power." *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 127.

In his brief the Attorney General states repeatedly that the fees cannot be allowed because the circuit court had already determined that the money held by the trustee "belonged to the State." For this proposition he cites a decision of the appellate court in *Layfer v. Tucker* (1979), 71 Ill. App. 3d 333, where the facts were similar in many respects to those before us here. In holding that attorney fees could not be allowed against the court-established fund the appellate court in *Layfer* also reasoned that the fund belonged to the State (71 Ill. App. 3d 333, 338). In *Layfer* the statutory provision in question had been invalidated in a different case (*Goldstein v. Rosewell* (1976), 65 Ill. 2d 325) brought by a different plaintiff, represented, however, by the same attorneys. Quite apart from that consideration, nevertheless, we do not agree that the question of sovereign immunity can be resolved by the question-begging assertion that the fund is already the property of the State. Such a rationale ignores the realities of the situation.

We are also unable to agree with the Attorney General's contention that the allowance of fees constitutes the payment of fees to private attorneys for the collection of taxes in violation of article V, sections 15 and 21, of

the Illinois Constitution. The State did not engage the plaintiff's attorneys, and the claim that they were paid by the State rests upon the same erroneous assumption which has just been discussed.

The Attorney General's remaining contention—that the fees awarded were excessive—is directed only to those of the plaintiff's attorneys, not to the fees awarded to the trustee. The trial judge assigned an hourly rate of $100 to each of the attorneys, and applied that rate to a total of 400 hours, a figure closely approximating the hours logged in the petition for fees, thus arriving at a lodestar amount of $40,000. To the latter the trial judge applied a multiplier of 2.5, yielding $100,000. As previously noted, the petition for fees had sought $148,563.

The Attorney General does not object to the multiplier, which is within the guidelines given in *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 92-93. Unlike *Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, the use of any multiplier at all is not rendered inappropriate because of prior litigation. *Fiorito v. Jones* (1978), 72 Ill. 2d 73, 91.

The Attorney General does object, however, to the refusal of the trial court to assign different hourly rates for different categories of service, a procedure which *Fiorito* stated might be appropriate, and which the Attorney General proposed here. According to the Attorney General the plaintiff's attorneys performed some services on the appeal which duplicated services already performed at the trial, and spent some time on matters which were necessary to the success of the litigation but did not call for the exercise of legal skills. The plaintiff's attorneys were nevertheless allowed fees for such services at the full hourly rate, which, when multiplied, came to $250 per hour. See *Johnson v. Georgia Highway Express, Inc.* (5th Cir. 1974), 488 F.2d 714, 717.

We intimate no opinion whether or not the award of

fees should be reduced, but in view of the Attorney General's contentions we remand the cause to the circuit court with directions to examine the evidence with a view to determining whether a lower hourly rate should be set for any of the services which the plaintiff's attorneys rendered.

The plaintiff's attorneys do not press their cross-appeal here, and they advance no specific reasons why the circuit court's dismissal of their counterclaim should be deemed erroneous. The judgment of the circuit court dismissing the counterclaim is therefore affirmed.

*Affirmed and remanded,*
*with directions.*