2022 IL App (1st) 200845-U

SECOND DIVISION
June 21, 2022

No. 1-20-0845

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| SANDY TSAI, STEALTH PROPERTIES, LLC, a limited liability company, JOHN DONGAS, CASTLE REALTY INVESTMENTS, LLC, and BLUE ISLAND GD INVESTMENTS, individually and derivatively on behalf of 15th Street Blue Island, LLC, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 12 CH 28187 |
| | ) | |
| JERRY KARLIK, KEITH GILES, JORDAN KARLIK KARGIL BLUE ISLAND, LLC, a limited liability company, and SPIROS PICOULAS, | ) ) ) ) | Honorable Anna H. Demacopoulos, |
| Defendants- Appellants. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County is affirmed; the trial court had equitable authority to assess attorney fees against defendants individually in plaintiffs' shareholder derivative lawsuit; the court's broad equitable powers under the common fund doctrine permit the imposition of attorney fees against the losing party in a derivative shareholders suit regardless of a contract or statute.

¶ 2    Plaintiffs, Sandy Tsai, Stealth Properties, LLC, John Dongas, Castle Realty Investments, LLC, Blue Island GD Investments, and 15th Street Blue Island, LLC (15BI), individually and derivatively on behalf of 15BI, filed a nine-count complaint against defendants, Jerry Karlik,

Keith Giles, Jordan Karlik, Kargil Blue Island, LLC, a limited liability company (KBI), and Spiros Picoulas, seeking damages for defendants' conduct in the operation of 15BI. The circuit court of Cook County conducted a bench trial and entered judgment generally in favor of plaintiffs and against defendants. The trial court awarded plaintiffs compensatory damages but denied plaintiffs' request for punitive damages. The parties cross-appealed in appellate case numbers 1-18-2200 and 1-18-2201, which we consolidated. See *Tsai v. Karlik*, 2021 IL App (1st) 182200-U. We affirmed the trial court's judgment that the defendants engaged in self-dealing and breached their fiduciary duties. We affirmed in part and reversed the trial court in part on certain compensatory damages. *Tsai*, 2021 IL App (1st) 182200-U, ¶ 123. Meanwhile, the trial court had bifurcated the issue of attorney fees from the original judgment and conducted a hearing on attorney fees while the appeal was pending. In that hearing the trial court ruled that the conduct of defendants was fraudulent and oppressive and granted plaintiffs' petition for attorney fees against the individual defendants. For the following reasons, we affirm the trial court's judgment awarding attorney fees in favor of plaintiffs and against defendants individually.

¶ 3                                          BACKGROUND

¶ 4      We state only that information necessary to an understanding of our resolution of the issues in this appeal. This appeal concerns only whether the trial court was authorized to assess attorney fees against the individual defendants in the absence of a contract or statutory provision. For a fuller discussion of the litigation underlying this appeal reference can be made to our order *Tsai v. Karlik*, 2021 IL App (1st) 182200-U. Some of what is stated here is taken directly from that order.

¶ 5    The trial court based its attorney fee award, in part, on equitable principles and the egregiousness of defendants' conduct. In this appeal defendants do not contest the amount of the attorney fees, they only contest whether the court was authorized to assess fees against the individual defendants. Therefore, we will briefly discuss defendants' acts and the context in which they were committed.

¶ 6    Plaintiffs are members of 15BI. 15BI is an Illinois limited liability company formed for the purpose of a property development at 15th Street and Blue Island Avenue in Chicago (the Property). Defendants are members and managers, or agents of Kargil Blue Island, LLC (KBI). KBI is a "Class B" member of 15BI and serves as a manager-member of 15BI. Karlik and Giles also owned and controlled Kargil Development Partners (KDP).

¶ 7    In 2006 KDP entered into a contract to purchase the Property, which was undeveloped, for $3.72 million. Karlik and Giles formed 15BI in 2006 to own and develop the Property. Thereafter, plaintiffs made financial contributions totaling approximately $3.7 million to become members of 15BI. Plaintiffs received 47% interest in 15BI as "Class A Members."  KBI made no capital contribution but received a 53% interest in 15BI as a "Class B Member" and was named manager of the company. Although the parties' operating agreement stated the manager is not entitled to compensation for services performed for 15BI, Karlik claimed that KBI was compensated with the 53.75% ownership interest in 15BI for serving as 15BI's manager.

¶ 8    In the first appeal, we affirmed the trial court's finding that defendants engaged in a series of transactions that constituted a breach of fiduciary duty and self-dealing. The trial court found that defendants "breached their duty of loyalty to the Class A members [of 15BI]."

¶ 9    The trial court characterized defendants' accounting practices as "deceitful" and noted in particular the absence of records for the alleged allocation of payroll, taxes, and insurance among

various projects for 2008 through 2011 and that "Giles testified that in 2009, 15BI spent $75,000 for 'overhead' and $58,731 for 'payroll and admin,' despite the fact there was no marketing agent, no real estate agent, no construction company, and no entity other than employees of F&G hired in 2009."

¶ 10     The trial court awarded plaintiffs $1.6 million compensatory damages. While the parties were appealing the judgment, the parties addressed the bifurcated issue of attorney fees. Plaintiffs filed a petition for attorney fees "as provided for in the Illinois Limited Liability Company Act [(LLC Act)], 805 ILCS 180/40-15 *et seq.* [West 2018.]" The petition asserted that plaintiffs' derivative complaint included counts for an injunction, statutory expulsion, breach of fiduciary duties, and civil conspiracy; that plaintiffs' "derivative action was successful" and plaintiffs received a judgment; and, as a result, the court can award plaintiffs reasonable attorney fees pursuant to the LLC Act. Plaintiffs' asserted "an award of attorneys' [*sic*] fees and expenses is warranted given Defendants' intentional and purposeful acts," given defendants' "tactics after the litigation was filed," and "to balance the equities in this matter." The petition notes that although plaintiffs secured a $1.6 million judgment in restitution, "unless attorneys' [*sic*] fees and expenses are also awarded to Plaintiffs, the Company will not receive the vast majority of the restitution because it will have already been paid in litigation costs to obtain this outcome." The petition states: "In short, Plaintiffs and the Company should not be punished because Defendants refused to repay admittedly misappropriated funds and instead chose to engage in protracted litigation." The petition sought attorney fees "[p]ursuant to the Illinois Limited Liability Company Act" and "any other relief this Court deems just and proper."

¶ 11     On September 20, 2019, the trial court issued a lengthy written judgment on plaintiffs' petition for attorney fees. The vast majority of the trial court's written judgment is dedicated to

reciting the court's findings of fact as to defendants' conduct related to 15BI, including findings concerning: (1) the purchase of other real estate with 15BI money, (2) payments to architects and attorneys, (3) loans to employees of other entities and others, (4) payments to other entities, (5) the sale of interest in the company, (6) defendants' accounting practices, and (7) employment and payment to a defendant's son. However, those findings of fact are not of particular concern to this appeal; so we will not repeat them here. This appeal primarily concerns only whether the trial court was authorized to award attorney fees in favor of plaintiffs against defendants individually. The question of whether under the facts of the case the court should have made an award for attorney fees or the amount of the fees is not raised by defendants-appellants and, therefore, we will consider it forfeited.

¶ 12    On the question of whether the trial court could award attorney fees against defendants individually, the trial court's written judgment makes findings of law. Initially, the court noted that plaintiffs included a prayer for relief for attorney fees with the counts in the complaint for breach of fiduciary duty and civil conspiracy and that the "prayer for relief does not specify attorneys' [*sic*] fees as a result of certain statutory fees or as equitable relief." The court found that defendants' "intentional wrongdoing, oppressive conduct, fraud, and multiple breaches of fiduciary duty justify an assessment for Plaintiffs' attorneys' [*sic*] fees and costs against Defendants *personally*." (Emphasis in original.) The court construed the petition as a request for a judgment "*in addition*" (emphasis in original) to the September 2018 judgment against defendants.

¶ 13    The trial court's written judgment listed "45 distinct actions by Defendants that are fraudulent and/or oppressive." As it pertains to this appeal, the judgment addressed "the ability to recover attorneys' [*sic*] fees in a derivative action lawsuit, the common fund doctrine and its

exception for attorneys' [*sic*] fees related to parties' fraudulent or oppressive actions," the "use of the American Rule and fee-shifting versus fee-sharing statutes under the Illinois Limited Liability Company Act, *** other states' interpretations of fee-sharing versus fee-shifting statutes, and *** this Court's equitable powers to allow for attorneys' [*sic*] fees." In this case, the court found defendants' conduct was "well within the bounds of 'fraudulent and oppressive acts' and their deliberate and corrupt actions go far beyond those parameters.

¶ 14    Regarding an alleged "exception [to the common fund doctrine] for attorneys' [*sic*] fees related to parties' fraudulent or oppressive actions," the trial court found that "[t]he Illinois Appellate Court expressly held that attorneys' [*sic*] fees and costs can be assessed against the defendants in a derivative action where the court finds the defendants' conduct to be either fraudulent or oppressive." The court relied on the decisions in *Ross v. 311 North Central Avenue Building Corp,* 130 Ill. App. 2d 336, 351 (1970), and *Lasday v. Weiner*, 273 Ill. App. 3d 461, 465 (1995). The court found that the *Ross* court held that the individual defendants in that case could be required to pay all or part of the attorney fees " 'according to equitable rules and principles.' " The *Ross* court had found that the defendants' conduct was "fraudulent and oppressive." The trial court recognized the common fund doctrine as an exception to the American Rule that each party pays its own attorney fees but found, relying on *Lasday*, 273 Ill. App. at 465 and *Lee v. City of Chicago*, 31 Ill. 2d 252 (1964), that the court "may direct payment to be made either from the common fund being protected by the suit or from the defendants individually."

¶ 15    The trial court rejected defendants' argument that under the LLC Act an award of attorney fees must come from the common fund and cannot be made against them individually. The court examined section 40-15 of the LLC Act, including sister states' treatment of similar

statutory language, and determined that section 40-15 "should be treated as a fee-shifting statute to create an equitable outcome." The court ruled that its equitable powers allow for an order against defendants' individually for attorney fees due to defendants' fraudulent and oppressive conduct. The court also found that regardless of its construction of section 40-15, the court bifurcated proceedings on plaintiffs' fee petition from the judgment in favor of plaintiffs on plaintiffs' complaint and, therefore, the court was permitted to enter a judgment on the fee petition independently of the judgment in favor of plaintiffs; *i.e.*, not against the common fund but against defendants individually.

¶ 16    The trial court entered a written judgment setting the matter for an evidentiary hearing on the reasonableness of the attorney fees in this case (which is not an issue in this appeal) or ordering defendants to pay approximately $1.2 million in plaintiffs' attorney fees if no evidentiary hearing is requested.

¶ 17    This appeal followed.

¶ 18                                ANALYSIS

¶ 19    Illinois follows the American Rule with regard to attorney fees and costs. Under the American Rule, "absent statutory authority or a contractual agreement, each party must bear its own attorney fees and costs." *Uncle Tom's, Inc. v. Lynn Plaza, LLC*, 2021 IL App (1st) 200205, ¶ 72. Two questions are involved in a trial court's decision to award the prevailing party attorney fees: first, whether the court has authority to grant attorney fees and second whether to award fees in a particular case. See *Forest Preserve District of Cook County v. Continental Community Bank & Trust Co.*, 2017 IL App (1st) 170680, ¶ 32. "[W]hether the court has authority to grant attorney fees is a question of law we review *de novo*, whereas a court's decision to as to whether to award authorized fees is reviewed for an abuse of discretion." *Id.* (citing *Spencer v. Di Cola*,

2014 IL App (1st) 121585, ¶ 34). We will find an abuse of discretion where no reasonable person could take the view adopted by the trial court. *Id.*

¶ 20    The issue in this this case is whether the trial court had the authority to award attorney fees in favor of plaintiffs and against defendants individually in plaintiffs' shareholder derivative lawsuit; therefore, we review the question of whether the court is authorized to assess attorney fees against the individual defendants in this case *de novo*. *Id.* In a shareholder derivative lawsuit such as this one any award of attorney fees is usually made under the common fund doctrine. See *DeFontaine v. Passalino*, 222 Ill. App. 3d 1018, 1033-34 (1991). "The common fund doctrine provides that if a plaintiff in a shareholders' derivative action is successful and the benefit goes to the corporation, the plaintiff is entitled to recover his necessary expenses and disbursements, including attorney fees" from the common fund. *Caulfield v. Packer Group, Inc.*, 2016 IL App (1st) 151558, ¶ 69 (citing *De Fontaine,* 222 Ill. App. 3d at 1033–34).

¶ 21    In *DeFontaine*, this court recognized that attorney fees and costs in such a situation may be awarded in the discretion of the court according to equitable rules and principles, and generally they must come from the fund." *Id.* (citing *Ross v. 311 North Central Avenue Building Corp.,* 130 Ill. App. 2d 336, 351 (1970)). In the absence of a statute, the common fund doctrine represents an equitable concept that constitutes an exception to the American Rule. *DeFontaine*, 222 Ill. App. 3d at 1034. The LLC Act codifies the common fund doctrine. Section 40-15 of the LLC Act reads as follows:

> "If a derivative action is successful, in whole or in part, or if anything is received by the plaintiff as a result of a judgment, compromise, or settlement of an action or claim, the court may award the plaintiff reasonable expenses, including reasonable attorney's fees, and shall direct the plaintiff to remit to the

limited liability company the remainder of those proceeds received by the plaintiff." 805 ILCS 180/40-15 (West 2018).

¶ 22    Nonetheless, in *Ross* this court found that "under the equitable rules and principles in that case, [the individual] defendants could properly be required to pay all or part of plaintiff's costs and fees. *Ross*, 130 Ill. App. 2d at 351. In *Ross*, the trial court found that a loan from the corporation involved in the litigation to another corporation owned and controlled by the defendants was a fraud upon the plaintiffs' corporation and was oppressive. *Ross*, 130 Ill. App. 2d at 341-42. The trial court ordered the defendants to reimburse the plaintiffs for plaintiffs' attorney fees, costs, and expenses. *Id*. at 342. On appeal, the *Ross* court found the evidence amply sustained the trial court's findings of fraudulent and oppressive acts by the defendants. *Id.* at 343. The defendants argued that the award of attorney fees and costs was improper under the American Rule and that the Illinois Business Corporation Act did not provide for the allowance of attorney fees. See *Ross*, 130 Ill. App. 2d at 349. The plaintiffs responded the award of attorney fees and costs was proper under the common fund doctrine. See *id*. at 350.

¶ 23    The *Ross* court found that "attorney's fees and costs, in a matter such as this, may be awarded in the discretion of the court according to equitable rules and principles, and generally they must come from the fund being protected by the suit." *Ross*, 130 Ill. App. 2d at 351. The *Ross* court went on to hold that in that case, "the individual defendants, 'according to equitable rules and principles,' could be properly required to pay either all or part of the costs and solicitor's fees. [Citation.]" *Ross*, 130 Ill. App. 2d at 351 (quoting *Lee v. Retirement Board of Policemen's Annuity and Benefit Fund of the City of Chicago*, 31 Ill. 2d 252, 256 (1964)). *Lee* does not address the common fund doctrine or attorney fees in shareholder derivative suits. *Lee* stands at most for the proposition that when an award of attorney fees is in the discretion of the

trial court that discretion is to be exercised according to equitable rules and principles. See *Lee*, 31 Ill. 2d at 256.

¶ 24    The decision in *Ross* has thus been relied upon as authority for the proposition that where the defendants' conduct in a shareholder derivative suit is fraudulent or oppressive the trial court may order the individual defendants to pay the plaintiffs' attorney fees rather than entering a judgment ordering the payment of attorney fees from the common fund. See *Lasday*, 273 Ill. App. 3d at 465 ("The court must exercise its discretion according to equitable rules and principles and may direct payment to be made either from the common fund being protected by the suit or from the defendants individually."). But see *Hallmark Personnel, Inc. v. Pickens-Kane Moving & Storage Co.*, 82 Ill. App. 3d 18, 24 (1980) (finding that "the fees were awarded in *Ross* under an established exception to the general rule;" *i.e.*, the common fund doctrine). This court acknowledged in *DeFontaine* that it has "questioned the validity of *Ross*" without deciding whether its holding is proper. See *id*. (citing *Mid-West National Bank v. Metcoff,* 23 Ill. App. 3d 607 (1974) (the court "noted the conflict in Illinois as to whether there were any equitable principles upon which attorney fees may be awarded in the absence of statute or contract. Finding *Mid–West* distinguishable from *Ross,* the conflict was not decided by the court.")). In this appeal, defendants contend our supreme court settled the question in *Chapman & Associates, Ltd. v. Kitzman*, 193 Ill. 2d 560 (2000).

¶ 25    In *Chapman*, our supreme court found that:

> "The common fund doctrine does not authorize a party to shift fees to an
> adversary, but rather authorizes the spread of fees among those who benefitted
> from the litigation. The doctrine permits a party who creates, preserves, or
> increases the value of a fund in which others have an ownership interest to be

reimbursed from that fund for litigation expenses incurred, including counsel fees. [Citation.] The litigant or lawyer who recovers a common fund for the benefit of others is entitled to a reasonable attorney fee from the fund as a whole. [Citations.] If the costs of litigation are not spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts. [Citation.]" *Chapman & Assoc.*, 193 Ill. 2d at 572–73.

¶ 26   The first issue in *Chapman* was what state's law applied to determine whether the common fund doctrine can be used to obtain attorney fees in a wrongful death action. Second, the court had to decide whether, depending on the applicable law, the complaint for fees was legally sufficient. See *id*. at 567. The court found that if Illinois law applied, the complaint stated a cause of action pursuant to the common fund doctrine. *Id*. at 568. After deciding that Illinois law applied our supreme court turned to a discussion of the common fund doctrine in Illinois. *Id*. at 572. The court stated the general rule of the common fund doctrine quoted above, then addressed the defendants' arguments in turn. See *id*. at 573-78. None of the defendants' arguments concerned whether equity ever permitted the court to award attorney fees in favor of the prevailing party in a shareholder derivative, or any other, lawsuit against the defendant individually. See *id*. (The defendants argued (1) the common fund doctrine only applies to class action and subrogation cases; (2) there had to exist a segregated fund under court control, and (3) the common fund doctrine can never apply in a wrongful death action. *Chapman & Assoc.*, 193 Ill. 2d at 573-78.) Thus, our supreme court did not discuss at length the question of whether the common fund doctrine can ever authorize a party to shift fees to an adversary (such as in the case of fraudulent and oppressive conduct) or rather, whether the doctrine only permits a party who creates a fund to be reimbursed from that fund. See *id*.

¶ 27    Nonetheless, in its discussion our supreme court did cite *Saltiel v. Olsen*, 85 Ill. 2d 484, 489 (1981), as "explaining that attorney fees are not charged against an adversary in fund cases." *Chapman & Assoc.*, 193 Ill. 2d at 576. In *Saltiel*, the primary argument against awarding fees in favor of the prevailing party was that to do so would violate the sovereign immunity of the State. *Saltiel*, 85 Ill. 2d at 488. Our supreme court then found that it has "held in a number of cases that a successful plaintiff may recover attorney fees from other persons to the extent that as an incident to the litigation a fund was created from which the fees could be drawn." *Saltiel*, 85 Ill. 2d at 489. Our supreme court expressly held that the common fund doctrine is not an exception to the American Rule. See *id.* at 489 (citing *Ritter v. Ritter*, 381 Ill. 549 (1943) (*Ritter* formally adopted the American Rule in Illinois.)). Instead, the court found:

> "In these cases a plaintiff's attorney fees and expenses are not charged against the adversary because the latter lost the case. On the contrary they are charged against a person or an entity that is benefited by the fund which was created or preserved by the plaintiff's success ***." *Saltiel*, 85 Ill. 2d at 489.

The court held the government may be the "beneficiary thus charged." *Id*.

¶ 28    The *Saltiel* court found that it was "clear that in the present case no objection to the allowance of attorney fees could be sustained if the governmental entity entitled to the fund were other than the State of Illinois." *Saltiel*, 85 Ill. 2d at 491. Its subsequent discussion focused on the fact the party against which fees would be charged was the State. See *id.* at 489-93. *Saltiel* does not specifically address whether the common fund doctrine can ever authorize a party to shift fees to an adversary (such as in the case of fraudulent and oppressive conduct) or rather, whether the doctrine only permits a party who creates a fund to be reimbursed from that fund. Thus,

1-20-0845

*Saltiel*'s holding that in a common fund doctrine case fees are not charged against the prevailing party's adversary may be limited to its facts wherein the adversary was the State.

¶ 29   Based on the foregoing, we hold this court cannot say *Chapman* overruled *Ross*.[1] Therefore, the answer to the key question in this case, whether individual defendants could be ordered to pay plaintiffs' attorney fees, remains controlled, in this district, by this court's decision in *Ross*. Moreover, we find it instructive that the decisional law, including *Chapman & Assoc.*, makes clear that the common fund doctrine is an equitable principle. See *Chapman & Assoc.*, 193 Ill. 2d at 569-75. In *Chapman*, our supreme court found that "[t]he basic policy underlying the common fund doctrine is the prevention of unjust enrichment." *Id.* at 569. The court noted that unjust enrichment is an equitable theory. *Id*. at 571. "Whether the doctrine applies in a particular case is not determined by a label, but rather by a proper understanding of the doctrine and its limitations." *Id.* at 573. The court described the doctrine and its limitations and follows:

> "The common fund doctrine does not authorize a party to shift fees to an
>
> adversary, but rather authorizes the spread of fees among those who benefitted
>
> from the litigation. The doctrine permits a party who creates, preserves, or

---

[1]     Although in no way relied upon by this court, we are aware that the case reporting agencies label the decisions from this court as "overruled" by subsequent caselaw and whether our previous decisions have been "called into question," including when concomitant courts have declined to follow a decision. We would be remiss to fail to note that the case reporting agency on which this court relies does not list *Ross* as "overruled" or even "called into question." The worst "negative treatment" *Ross* has received by subsequent caselaw is that another court declined to follow its holding and it has been distinguished from two other cases. See https://1.next.westlaw.com/RelatedInformation/I6b837729d94c11d983e7e9deff98dc6f/kcCitingReferences.html?docSource=142c771950144631ad612c622c34c60d&pageNumber=1&facetGuid=hae8871a039bfd1fa16ef28ee2f3549b9&ppcid=2fbd4585ff704c86beae81426167b451&transitionType=ListViewType&contextData=(sc.UserEnteredCitation) (visited May 2, 2022).

> increases the value of a fund in which others have an ownership interest to be
> *reimbursed* from that fund for litigation expenses incurred, including counsel fees.
> [Citation.] The litigant or lawyer who recovers a common fund for the benefit of
> others is entitled to a reasonable attorney fee from the fund as a whole.
> [Citations.] If the costs of litigation are not spread to the beneficiaries of the fund,
> they will be unjustly enriched by the attorney's efforts. [Citation.]" *Chapman &
> Assoc.*, 193 Ill. 2d at 572-73.

However, our supreme court also found that " ' the absence of *** the creation of a fund ***
hardly touch[es] the power of equity in doing justice as between a party and the beneficiaries of
his litigation,' [citation]." *Id*. at 575 (quoting *Sprague v. Ticonic National Bank*, 307 U.S. 161,
167 (1939)).

¶ 30    Finally, we must recall that "[a] court of equity is a court of conscience, and will exercise
its extraordinary powers only to enforce the requirements of conscience." *American University v.
Wood*, 294 Ill. 186, 195 (1920). "In fashioning a remedy, courts have broad discretion to grant
the relief that equity requires. [Citation.]" (Internal quotation marks omitted.) *GX Chicago, LLC
v. Galaxy Environmental, Inc.*, 2015 IL App (1st) 133624, ¶ 72 (quoting *Westcon/Dillingham
Microtunneling v. Walsh Construction Co. of Illinois*, 319 Ill. App. 3d 870, 878 (2001)).
Additionally, "courts may consider the relative benefits and hardships to the parties in crafting an
appropriate remedy. [Citation.]" *Westcon/Dillingham Microtunneling*, 319 Ill. App. 3d at 878.
"Relevant considerations include both what is fair and what is workable. [Citation.]" *GX
Chicago, LLC*, 2015 IL App (1st) 133624, ¶ 72 (quoting *Westcon/Dillingham Microtunneling*,
319 Ill. App. 3d at 878.

¶ 31    In *Ross*, this court recognized that "attorney's [*sic*] fees and costs, in a matter such as this, may be awarded in the discretion of the court *** and generally they must come from the fund being protected by the suit." *Ross*, 130 Ill. App. 2d at 351. However, this court also recognized that such award must be made "according to equitable rules and principles" and that in the case before it, "the individual defendants, 'according to equitable rules and principles,' could be properly required to pay either all or part of the costs and solicitor's fees. [Citation.]" *Id*. (quoting *Lee*, 31 Ill. 2d at 252). *Ross* does not authorize the court to award fees against an unsuccessful litigant because they lost the case. See *Saltiel*, 85 Ill. 2d at 489. We find *Ross* to stand for the proposition that under the common fund doctrine the court should look first to the fund created by the plaintiffs' efforts but that equity may demand that fees under the common fund doctrine be awarded against the individual defendants. Nothing in *Ross* abrogates the general rule that attorney fees "must come from the fund being protected by the suit." See *Ross*, 130 Ill. App. 2d at 351. Rather, *Ross* merely embraces the philosophy our supreme court would express in *Chapman* that a proper application of the common fund doctrine necessitates a "proper understanding of the doctrine and its limitations." *Chapman & Assoc.* 193 Ill. 2d at 573. The doctrine is one that is based in equity. If equity—and its "broad discretion" to grant the relief it "requires" (see *supra*, ¶ 36)—demands that reimbursement to avoid unjust enrichment not come from the fund created, we find no reason to deny equity's demand. See *id*. at 569-75.

¶ 32    We hold that the trial court was authorized to assess attorney fees against individual defendants as an exception to the American Rule. In light of this holding, we have no need to address defendants' argument the trial court erroneously concluded that section 40-15 of the

LLC Act authorizes fee shifting.[2] The trial court's judgment is proper under the equitable common fund doctrine, and this court will affirm a trial court's judgment on any basis presented by the record. The facts supporting the trial court's judgment against defendants individually are ample in this case but, regardless, defendants make no persuasive argument that if the trial court had the power to award fees against defendants individually (which, sitting in equity, it did), the award was nonetheless an abuse of discretion. *United Equitable Insurance Co. v. Thomas*, 2021 IL App (1st) 201122, ¶¶ 78, 86 (points not argued are forfeited; reviewing court may affirm on any grounds called for by the record).

¶ 33                                          CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 35    Affirmed.

---

[2]    We note, however, the plain language of section 40-15 is consistent with our interpretation of *Ross* in light of *Chapman* because the statute does not expressly contain a limitation that the attorney fees be awarded only from the judgment attained by the plaintiff; at most the language requires that if fees are awarded from that judgment the plaintiff must remit the remainder of the judgment to the fund. See 805 ILCS 180/40-15 (West 2018); *Elam v. Municipal Officers Electoral Board for Village of Riverdale*, 2021 IL 127080, ¶ 14 ("our primary goal of statutory construction, to which all other rules are subordinate, is to ascertain and give effect to the intention of the legislature. [Citation.] The best indication of that intent is the statutory language, which, when clear and unambiguous, must be construed as written, without reading into it exceptions, conditions, or limitations that the legislature did not express.").